[No. A115519. First Dist., Div. One. Dec. 21, 2007.]

ALLEN HARMAN, Plaintiff and Respondent, v.
CITY AND COUNTY OF SAN FRANCISCO, Defendant and Appellant.

## COUNSEL

Dennis J. Herrera, City Attorney, Wayne K. Snodgrass and Vince Chhabria, Deputy City Attorneys, for Defendant and Appellant.

Pacific Legal Foundation, Sharon L. Browne and Paul J. Beard II for Plaintiff and Respondent.

## OPINION

**SWAGER, J.**—This case has returned to us yet again for another review of the trial court's award of attorney fees. We conclude the award is not an abuse of discretion, with the exception of the fees for work performed in the prior appeal on the issue of the attorney fees. We therefore reverse that part of the judgment and remand the case for limited proceedings to reduce the award accordingly. In view of the broad discretion granted to the trial court we are constrained to affirm the award of attorney fees in all other respects.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

This case began in the federal court in September of 1999, when respondent Allen Harman and two other White males, Stefan Cheresnik and John McGoldrick, who were employed as airfield safety officers at the San Francisco International Airport, filed a complaint which alleged employment discrimination. After lengthy federal court proceedings the parties stipulated

---

[1] Much of our recitation of the underlying facts will be taken directly from our prior opinion in *Harman v. City and County of San Francisco* (2006) 136 Cal.App.4th 1279 [39 Cal.Rptr.3d 589] (*Harman*).

to dismissal of the federal action in favor of a new complaint to be filed in state court. The complaint filed in state court against defendants, City and County of San Francisco, individual members of the San Francisco Airport Commission, and the director of the San Francisco International Airport,[2] initially sought only equitable relief, but was later amended to include a cause of action for damages. "The first three causes of action of the first amended complaint alleged discrimination on the basis of race and sex in violation of Proposition 209 (Cal. Const., art. I, § 31) and the equal protection clause of the Fourteenth Amendment to the United States Constitution and sought prospective equitable relief through an injunction, declaratory judgment, and writ of mandate commanding the City 'to implement race- and sex-neutral recruitment, hiring, and promotional policies.' The fourth cause of action sought damages under Proposition 209 and the federal Civil Rights Act as codified in title 42 United States Code section 1983 (hereafter section 1983)." (*Harman, supra*, 136 Cal.App.4th 1279, 1286–1287.)

"The trial court sustained the City's demurrer to the fourth cause of action, as it stated a claim of damages under Proposition 209, on the ground that it did not allege compliance with the government claims act. (Gov. Code, § 905 et seq.) After completion of discovery, the court granted the City's motion for summary judgment on the remaining causes of action and the plaintiffs appealed." (*Harman, supra*, 136 Cal.App.4th 1279, 1287.)

In our opinion in the first appeal in this case (*Cheresnik v. City and County of San Francisco* (Apr. 23, 2003, A098415) [nonpub. opn.]), we reversed that portion of the judgment that dismissed Harman's fourth cause of action for damages under section 1983, but affirmed the judgment as to all other plaintiffs and causes of action. We found that "the City adopted an equal employment opportunity plan in July 2000 that stated policies consistent with evolving legal standards of employment discrimination under equal protection jurisprudence and Proposition 209. We found 'no basis in the record to question the Airport's commitment to conform to changing legal standards in the area of employment policy.' We also affirmed the summary judgment with respect to the claims of damages of two of the three defendants. In the case of Harman, we affirmed the demurrer to the claim for damages under Proposition 209, but we found a triable issue of fact relating to his claim of damages under section 1983 arising from a delay in receiving a promotion to the job classification of '9220 Airport Operations Supervisor.' "[3] (*Harman, supra*, 136 Cal.App.4th 1279, 1287, fn. omitted.)

---

[2] Hereafter collectively referred to as the City or appellant.

[3] "The complaint originally attacked three personnel decisions: the termination of a pool of eligible candidates for a provisional appointment, the appointment of an acting supervisor for a 90-day period in April 1999, and the permanent appointment of airport operating supervisors through the normal civil service procedure. Since Harman received a permanent promotion as

"In reversing the dismissal of Harman's section 1983 claim," our finding of a triable issue of fact related to the "racially discriminatory purpose in the termination of the provisional pool and the acting appointment." (*Ibid.*)

Following our remand, the trial court denied the City's motion for nonsuit. Settlement negotiations produced a demand for $600,000 in damages from Harman; the City countered with an offer of $25,000. Trial then proceeded before a jury. The jury found in a special verdict form "that the City had 'an official policy or custom to intentionally discriminate against [W]hite males in promotional opportunities at the San Francisco International Airport.' The jury then awarded Harman $15,300 as damages for economic harm and another $15,000 as damages for emotional distress. The City moved for judgment notwithstanding the verdict and for new trial relying chiefly on a claim of *Monell* [*v. New York City Dept. of Social Services* (1978) 436 U.S. 658 [56 L.Ed.2d 611, 98 S.Ct. 2018]] error. The trial court denied the motions and entered judgment for Harman." (*Harman, supra*, 136 Cal.App.4th 1279, 1288.)

"Harman then filed two motions for attorney fees under title 42 United States Code section 1988 in the total amount of $1,095,202. He sought $713,152.75 on behalf of the Pacific Legal Foundation, which filed the original action, and $382,050.23 for trial counsel, Andrea Miller. The trial court awarded the entire sum finding that it was 'reasonable, after due consideration of the success obtained relative to the relief sought and other circumstances of this case.' The City filed a timely notice of appeal." (*Harman, supra*, 136 Cal.App.4th 1279, 1288.)

In our opinion in *Harman, supra*, 136 Cal.App.4th 1279, 1317, we affirmed the judgment for $30,300 in compensatory damages, but vacated the award of attorney fees. We concluded "that the trial court did not properly consider the standards governing the award of attorney fees under section 1988" as articulated in *Hensley v. Eckerhart* (1983) 461 U.S. 424 [76 L.Ed.2d 40, 103 S.Ct. 1933]. (*Harman, supra*, at p. 1316.) We again remanded the case "to give the court an opportunity to consider the determination of a reasonable fee." (*Ibid.*) We advised the trial court to "recalculate the lodestar figures applying the proper standards of reasonableness. Then, it must adjust the fee to reflect plaintiff's limited success by pursuing the two-step analysis dictated by *Hensley*. First, it should exclude hours expended on claims that are unrelated to the claim of damages on which Harman succeeded at trial. Secondly, it must reduce the award to reflect the limited nature of Harman's relief in comparison with the scope of the litigation as a whole. As instructed by *Hensley*, the court 'may attempt to identify specific hours that should be

airport operations supervisor in May 2000, his claim for damages was necessarily restricted to the other two personnel decisions." (*Harman, supra*, 136 Cal.App.4th 1279, 1287.)

eliminated, or it may simply reduce the award to account for the limited success.' [Citation.] When it recalculates the attorney fee award, the court must articulate a clear explanation of its reasoning in light of the authority surveyed in this opinion so as to facilitate meaningful appellate review. We express[ed] no opinion as to the amount of fees that the court should award. That amount [was] left to the trial court's sound discretion to be exercised in view of the governing standards we have set forth." (*Harman, supra*, at pp. 1316–1317.)

Once the case returned to the trial court, the City filed a peremptory challenge to the trial judge (Code Civ. Proc., § 170.6).[4] Along with opposition to the peremptory challenge, Harman filed a renewed request for attorney fees in the total amount of $1,118,457.75—$744,756.75 for the Pacific Legal Foundation, and $373,701 for Andrea Miller. The requested fees included amounts for work performed posttrial and on appeal, and purported to exclude amounts for hours expended on unsuccessful claims. As ordered by the trial court, the parties submitted memoranda on the issue of the reasonable amount of attorney fees.

In its order awarding attorney fees after remand, the trial court considered first the issue of the lodestar calculation. The court found that reasonable billing judgment was exercised by respondent's attorneys in preparing the billing summaries, and appellant failed to satisfy its burden to prove that the "presumptively reasonable" lodestar figure was erroneous. The rates presented by respondent's attorneys in the lodestar calculations were found to be "supported by the evidence in the declarations submitted in support of the attorneys['] fees award."

The trial court proceeded in detailed fashion to the two-step *Hensley* test: a "determination of related and unrelated claims and concerning adjustments to the lodestar based on *Hensley*." The court reviewed deletions made by respondent from fee submissions for time related to the cases "of the other two original plaintiffs" and the federal and state court equitable claims. The deletions were considered by the court as an adjustment of the first-step "lodestar" figure and a concession by respondent that to that extent "the equitable claims and the cases brought by the other two original plaintiffs were unrelated." With respondent's concessions in mind, the court then evaluated the specific "intermingled time on unrelated claims" that remained "in the initial lodestar calculation." Respondent's reductions were found "reasonable" and a proper accounting for all fees for claims unrelated to the "overall success" in the case.

---

[4] The trial court never expressly ruled upon appellant's peremptory challenge. Although this has been brought to our attention, no review of the court's failure to act on the challenge has been sought.

The court then determined that any additional reduction in the fee award in the second step of the *Hensley* test "would amount to doubly reducing fees" for the "limited success" in the case. The court specifically found that respondent's "lack of success" was "incrementally accounted for" in the deletions, and therefore "decline[d] to reduce the lodestar figure further." Additional fees of $144,170 were also awarded for time "associated with the appeal and for the remand proceeding," with a deduction for the rehearing proceeding that was "an unnecessary and unsuccessful step in the litigation." Attorney fees in the total amount of $1,113,905.40 were awarded to respondent by the trial court. This third appeal in the case followed.

## DISCUSSION

In this appeal we are confronted with the taxing problem of determining the reasonableness of an attorney fee award that far exceeds the monetary award recovered at the end of protracted and hard-fought litigation. The lodestar method that is used in section 1983 fee requests is so fraught with subjective factors that its real-life application is not easily reduced to the mathematical precision the method seems to invite. (See *Arbor Hill Concerned Citizens v. County of Albany* (2d Cir. 2007) 493 F.3d 110, 117.) Application of the lodestar method in this case also comes at a time when the trial court and the parties have the benefit of hindsight of over seven years of litigation. In this era of ever increasing legal fees and costs, few would claim to have the prescient abilities necessary to predict the final outcome of this litigation that started in 1999. With these observations, we proceed with our analysis, mindful of the broad discretion that is required to be accorded to the trial court.

Appellant claims that the attorney fee award is excessive, particularly when compared to the "limited success" of respondent in the "litigation as a whole." Although appellant challenges various aspects of the trial court's attorney fee award, its primary argument is that the attorney fee award simply has no proper "measure of proportionality" to the recovery of compensatory damages by respondent. The City maintains that "in light of Harman's extraordinarily limited success" in the case, "an award of $1.1 million on a recovery of $30,300 is totally out of line with the case law" cited in *Harman*. The City requests that we "simply reduce" the attorney fee award to $90,900, which represents an appropriate figure of "three times the amount" of recovery of damages by Harman. In the alternative, the City proposes that we undertake a reduction "to properly eliminate time billed for the unsuccessful claims," before and after our first opinion in the case that finally eliminated all the claims other than Harman's section 1983 action for damages, and on appeal.

■ In *Harman* we articulated at some length the essential guidelines that govern attorney fee awards to partially prevailing plaintiffs under 42 United States Code section 1988, and we reiterate them as pertinent here. First the "lodestar" figure is " 'calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. [Citation.] Adjustments to that fee then may be made as necessary in the particular case.' [Citation.]" (*Harman, supra*, 136 Cal.App.4th 1279, 1307.) The court "assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* [*v. Screen Extras Guild, Inc.* (9th Cir. 1975) 526 F.2d 67, 69–70] factors that are not already subsumed in the initial lodestar calculation." (*Morales v. City of San Rafael* (9th Cir. 1996) 96 F.3d 359, 363–364, fns. omitted.)[5] " 'The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.' [Citations.]" (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 154 [50 Cal.Rptr. 3d 273];[6] see also *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 [104 Cal.Rptr.2d 377, 17 P.3d 735].) "Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [95 Cal.Rptr.2d 198, 997 P.2d 511].)

---

[5] The 12 factors that may be considered to adjust the lodestar figure include: "(1) the time and labor required; (2) the novelty and difficulty of the questions [involved]; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." (*Blanchard v. Bergeron* (1989) 489 U.S. 87, 91, fn. 5 [103 L.Ed.2d 67, 109 S.Ct. 939]; see also *Cunningham v. County of Los Angeles* (9th Cir. 1988) 879 F.2d 481, 487; *Kerr v. Screen Extras Guild, Inc., supra*, 526 F.2d 67, 69–70; *Johnson v. Georgia Highway Express, Inc.* (5th Cir. 1974) 488 F.2d 714, 717–719.)

[6] While *Graciano* was an action brought under the California Automobile Sales Finance Act and the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.), the court used the *Hensley* standards for determining appropriate apportionment in the context of an attorney fee award to a partially prevailing party. (*Graciano v. Robinson Ford Sales, Inc., supra*, 144 Cal.App.4th 140, 153.) The courts have also applied the *Hensley* and *Harman* apportionment standards—or the equivalent—to resolve attorney fee disputes in SLAPP (strategic lawsuit against public participation) cases (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 343–344 [42 Cal.Rptr. 3d 607]; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1018 [113 Cal.Rptr.2d 625]), in cases pursued under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) (*Beaty v. BET Holdings, Inc.* (9th Cir. 2000) 222 F.3d 607, 610), and in cases of awards made under Civil Code section 1717 (*Wood v. Santa Monica Escrow Co.* (2007) 151 Cal.App.4th 1186, 1190 [60 Cal.Rptr.3d 597]; *Del Cerro Mobile Estates v. Proffer* (2001) 87 Cal.App.4th 943, 951 [105 Cal.Rptr.2d 5]).

■ *Hensley* "instructs that the initial lodestar calculation should exclude 'hours that were not "reasonably expended" ' " in pursuit of successful claims. (*Harman, supra,* 136 Cal.App.4th 1279, 1310, quoting *Hensley v. Eckerhart, supra,* 461 U.S. 424, 434.) "If questioned charges are included in the initial lodestar calculation, they are then subject to challenge under *Hensley* as being unrelated to the plaintiff's successful claims. . . . *Hensley* directs the court to consider whether the plaintiff failed 'to prevail on claims that were unrelated to the claims on which he succeeded?' [Citation.] Counsel's work on such unsuccessful and unrelated claims 'cannot be deemed to have been "expended in pursuit of the ultimate result achieved["] . . . and therefore no fee may be awarded for services [on such claims].' [Citation.] The court recognizes that 'there is no certain method of determining when claims are "related" or "unrelated," ' [citation] but it instructs the court to inquire whether the 'different claims for relief . . . are based on different facts and legal theories.' [Citation.] If so, they qualify as unrelated claims." (*Harman, supra,* at pp. 1310–1311.)

Conversely, " 'Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed.' [Citation.] 'Attorneys fees need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories.' [Citation.] Apportionment is not required when the issues in the fee and nonfee claims are so inextricably intertwined that it would be impractical or impossible to separate the attorney's time into compensable and noncompensable units." (*Graciano v. Robinson Ford Sales, Inc., supra,* 144 Cal.App.4th 140, 158–159.)[7]

■ If successful and unsuccessful claims are found to be *related,* the second step of the two-part analysis in limited-success cases requires the court to still evaluate the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." (*Hensley v. Eckerhart, supra,* 461 U.S. 424, 435.) If the plaintiff obtained "excellent results," full compensation may be appropriate. (*Ibid.*) If there was only "partial or limited success," full compensation "may be . . . excessive." (*Id.* at p. 436.) Where " 'the plaintiff achieved only limited success,' " the

---

[7] "[T]he favored procedure is for the district court to consider the extent of the plaintiff's success in making its initial determination of hours reasonably expended at a reasonable rate, and not in subsequent adjustments to the lodestar figure." (*Gates v. Deukmejian* (9th Cir. 1992) 987 F.2d 1392, 1404.) "Adjusting the lodestar on the basis of subsumed reasonableness factors after the lodestar has been calculated, instead of adjusting the reasonable number of hours or reasonable hourly rate at the first step, i.e. when determining the lodestar, is a disfavored procedure. [Citation.] However, as long as the district court only makes one adjustment per factor, either before or after the lodestar calculation," the error is harmless. (*Morales v. City of San Rafael, supra,* 96 F.3d 359, 364, fn. 9.)

court " 'should award only that amount of fees that is reasonable in relation to the results obtained.' [Citation.] In conducting this analysis, a court 'may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.' [Citation.]" (*Mann v. Quality Old Time Service, Inc., supra,* 139 Cal.App.4th 328, 343, italics omitted.) In this step of the *Hensley* analysis, "The trial court 'should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.' [Citation.] The court may appropriately reduce the lodestar calculation 'if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.' [Citation.] The decision emphasized, 'the most critical factor is the degree of success obtained.' [Citation.]" (*Harman, supra,* 136 Cal.App.4th 1279, 1312.)

As we also noted in *Harman*, our review of the award is severely constrained. "We review the trial court's award of attorney fees under section 1988 for an abuse of discretion." (*Robbins v. Regents of University of California* (2005) 127 Cal.App.4th 653, 665 [25 Cal.Rptr.3d 851].) " ' "[T]he appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." ' [Citations.]" (*Foundation for Taxpayer & Consumer Rights v. Garamendi* (2005) 132 Cal.App.4th 1375, 1388 [34 Cal.Rptr.3d 368].) " 'We review the entire record, attentive to the trial court's stated reasons in denying [or granting] the fees and to whether it applied the proper standards of law in reaching its decision. . . .' [Citation.]" (*Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614, 620 [33 Cal.Rptr.3d 817].) "If it did, we then determine whether the application of that standard to the facts was within the scope of its discretion under the statute." (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 83 [24 Cal.Rptr.3d 72]; see also *Punsly v. Ho* (2003) 105 Cal.App.4th 102, 113 [129 Cal.Rptr.2d 89].) We defer to the trial court's discretion "because of its 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.' [Citation.]" (*Choate v. County of Orange* (2000) 86 Cal.App.4th 312, 324 [103 Cal.Rptr.2d 339].) The California Supreme Court has explained, " 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong["] '—meaning that it abused its discretion. (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49 [141 Cal.Rptr. 315, 569 P.2d 1303]; *Fed-Mart Corp. v. Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 228 [168 Cal.Rptr. 525] [an appellate court will interfere with a determination of reasonable attorney fees 'only where there has been a manifest abuse of discretion'].)" (*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th 1084, 1095; see also *Children's Hospital & Medical Center v. Bonta´* (2002) 97 Cal.App.4th 740, 777 [118 Cal.Rptr.2d 629].)

I. *The Lack of Proportionality Between the Compensatory Damages Recovered by Harman and the Award of Attorney Fees.*

We first consider appellant's contention that the palpable disparity between the damages ultimately recovered by respondent and the $1,113,905.40 award of attorney fees alone demands reversal of the judgment. The case commenced with the claims of three plaintiffs for equitable relief to end discriminatory employment practices by the City and implement race- and sex-neutral recruitment, hiring, and promotional policies, but was subsequently amended to include causes of action for damages under Proposition 209 and section 1983. Of these multiple legal and equitable claims by multiple parties, only the damages claim of Harman survived to reach trial, and after his $600,000 settlement demand only $30,300 was awarded by the jury as compensatory damages for the delay in his promotion. We thus acknowledge the obvious: the damages obtained by respondent are quite disproportionate to the award of attorney fees.

■ The law does not mandate, however, that attorney fees bear a percentage relationship to the ultimate recovery of damages in a civil rights case. (*Harrington v. City of Napa* (N.D.Cal., Dec. 12, 2005, Civ. No. C-04-0958) 2005 U.S.Dist. Lexis 32341, *17.) "There is no precise formula for determining the extent to which a party has prevailed." (*LeMaire v. Maass* (9th Cir. 1993) 12 F.3d 1444, 1461.) "[T]he Supreme Court has not adopted a rule that measures a fee award by a proportion of the damages awarded." (*System Management, Inc. v. Loiselle* (D.Mass. 2001) 154 F.Supp.2d 195, 200, citing *Riverside v. Rivera* (1986) 477 U.S. 561 [91 L.Ed.2d 466, 106 S.Ct. 2686].) "Instead, the court must consider the significance of the overall relief obtained by the prevailing party in relation to the hours reasonably expended on the litigation and whether the expenditure of counsel's time was reasonable in relation to the success achieved." (*Mann v. Quality Old Time Service, Inc., supra*, 139 Cal.App.4th 328, 344.) The " 'most critical factor' " in assessing the proper amount of attorney fees to award a prevailing party under 42 United States Code section 1988 is not strict proportionality, but rather the " 'degree of success obtained' " by the plaintiff. (*Harman, supra*, 136 Cal.App.4th 1279, 1312, quoting *Hensley v. Eckerhart, supra*, 461 U.S. 424, 436.)

■ When assessing the reasonableness of an attorney fee award under 42 United States Code section 1988, the concepts of "degree of success" and direct "proportionality" are distinguishable. We recognized in *Harman* that the plurality opinion in *Riverside v. Rivera, supra*, 477 U.S. 561, 574, "rejected 'the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers.' " (*Harman, supra*, 136 Cal.App.4th 1279, 1313.) The court in

*Riverside* "endorsed instead a flexible approach to lodestar calculations that takes into account all considerations relevant to the reasonableness of the time spent. [*Riverside v. Rivera, supra*, at pp. 573–580] (opinion of Brennan, J.); *accord id.* at [p.] 585 (Powell, J., concurring in the judgment) (rejecting strict rule of proportionality because 'the facts and circumstances of litigation are infinitely variable'); *id.* at [p.] 595 (Rehnquist, J., dissenting) ('I agree with the plurality that the importation of the contingent-fee model to govern fee awards under § 1988 is not warranted by the terms and legislative history of the statute')." (*Cunningham v. County of Los Angeles, supra*, 879 F.2d 481, 486.) "While degree of success is critical in determining the amount of a fee award, [citation] proportionality is no longer an issue once the prevailing party has separated the wheat from the chaff (i.e., isolated the time spent on her successful claim or claims)." (*Gay Officers Action League v. Puerto Rico* (1st Cir. 2001) 247 F.3d 288, 296.)

" 'A rule that limits attorney's fees in civil rights cases to a proportion of the damages awarded would seriously undermine Congress' purpose in enacting [42 United States Code section] 1988. Congress enacted [42 United States Code section] 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process. [Citation.] These victims ordinarily cannot afford to purchase legal services at the rates set by the private market. . . . Moreover, the contingent fee arrangements that make legal services available to many victims of personal injuries would often not encourage lawyers to accept civil rights cases, which frequently involve substantial expenditures of time and effort but produce only small monetary recoveries.' [Citation.] 'A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts.' " (*Graciano v. Robinson Ford Sales, Inc., supra*, 144 Cal.App.4th 140, 164, quoting *Riverside v. Rivera, supra*, 477 U.S. 561, 576–578.) Further, "a unifactor approach tying the number of hours accepted as reasonable" solely to the proportion of damages recovered "would be inconsistent with the statutory mandate that district courts exercise discretion by considering *all* factors relevant to reasonableness." (*Cunningham v. County of Los Angeles, supra*, 879 F.2d 481, 486.)

The " 'amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988. It is, however, only one of many factors that a court should consider in calculating an award of attorney's fees. . . .' [Citation.]" (*Butler v. Dowd* (8th Cir. 1992) 979 F.2d 661, 676.) "There is no requirement of proportionality of fees sought to verdict though the court in its discretion may consider plaintiff's success in determin-

ing the reasonableness of fees. [Citations.] A rule of proportionality that would limit fee awards under section 1988 to a proportion of the damages recovered in the underlying suit is inconsistent with the flexible approach to lodestar calculations that takes into account all considerations relevant to the reasonableness of the time spent." (*Oberfelder v. City of Petaluma* (N.D.Cal., Jan. 29, 2002, Civ. No. C-98-1470 MHP) 2002 U.S.Dist. Lexis 8635, *12.) "[W]e do not reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in proportion to the damages' shortfall." (*Nigh v. Koons Buick Pontiac GMC, Inc.* (4th Cir. 2007) 478 F.3d 183, 190.)

▉ Nor are we persuaded to adopt the City's mathematical proposal to cap the fee award at a figure that represents a ratio of three times the damages recovered. (*Hensley v. Eckerhart, supra*, 461 U.S. 424, 435, fn. 11; *Gates v. Deukmejian, supra*, 987 F.2d 1392, 1404; *Gr. L.A. Coun. on Deafness v. Comm. TV of So. Cal.* (9th Cir. 1987) 813 F.2d 217, 222.) "The Supreme Court has disapproved on more than one occasion of such pretensions to mathematical precision." (*Cunningham v. County of Los Angeles, supra*, 879 F.2d 481, 485.) " '[S]uch a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors.' [Citation.]" (*Id.* at p. 486.) We therefore conclude that the award of attorney fees is not subject to reversal simply because it lacks definitive proportionality to the amount of damages recovered by respondent. There is "no mathematical rule requiring proportionality between compensatory damages and attorney's fees awards, *see City of Riverside v. Rivera*, 477 U.S. 561, 91 L.Ed.2d 466, 106 S.Ct. 2686 (1986), and courts have awarded attorney's fees where plaintiffs recovered only nominal or minimal damages. *See e.g.*, *Pollock v. Baxter Manor Nursing Home*, 716 F.2d 545, 547 (8th Cir. 1983) (upholding award of $50,000 in attorney's fees where plaintiff recovered $1.00 nominal damages); *Milwe v. Cavuoto*, 653 F.2d 80, 84 (2d Cir. 1983) (directing award of 'reasonable' attorney's fees where plaintiff recovered $1.00 in nominal damages on constitutional claim and 'substantial' compensatory damages on pendent state law claims); *Allen v. District of Columbia*, 503 A.2d 1233 (D.C. App. 1986) (ordering award of 'reasonable' attorney's fees where plaintiff recovered nothing on constitutional claim and $3,000 on pendent state law claim)." (*Thompson v. Intern. Ass'n of Mach. & Aero. Workers* (D.D.C. 1987) 664 F.Supp. 578, 581.)

## II.  *The Adjustments Made by the Trial Court.*

We proceed to an examination of the adjustments made by the trial court to account for Harman's limited success in the case, with primary emphasis "on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." (*Hensley v. Eckerhart, supra*, 461 U.S. 424, 435; see also *Morales v. City of San Rafael, supra*,

96 F.3d 359, 363; *LeMaire v. Maass, supra,* 12 F.3d 1444, 1461.) As a threshold matter we point out that the trial court followed our directive taken from *Hensley* to " 'provide a concise but clear explanation of its reasons for the fee award.' " (*Harman, supra,* 136 Cal.App.4th 1279, 1308, quoting *Hensley, supra,* at p. 437; see also *Lopez v. San Francisco Unified School Dist.* (N.D.Cal. 2005) 385 F.Supp.2d 981, 986.) The court also determined in accordance with the first step of *Hensley* that with specified exceptions— many of which were effectively conceded by respondent—counsel's work on unsuccessful claims was related to plaintiff's single successful claim. Appellant complains that "the trial judge did not properly eliminate time spent on unsuccessful claims." Specifically, appellant objects to the trial court's failure to delete as unrelated to the successful claim the "work done on behalf of the two losing plaintiffs, and in pursuit of injunctive relief" for respondent. Appellant also challenges the award of fees "for work done on appeal to defend the original inappropriate $1.1 million fee award." We thus review the trial court's findings on related and unrelated claims—that is, the first step of *Hensley.*

## A. *The Findings on Related and Unrelated Claims.*

The trial court accepted the assumption, based on respondent's billing submissions, that the claims for equitable relief by the "other two original plaintiffs were unrelated to the successful claim."[8] The court recognized that respondent had already "excised all time expressly related to equitable claims in federal court," but further reduced the award for related time that "could be isolated and excised." The court found that the deleted hours reflected in the submissions by respondent properly accounted for the time spent on unrelated, unsuccessful claims with respect to the summary judgment motion, the appeal, and the federal court action.

In light of the concession that two of the three plaintiffs' claims were unrelated to the single successful damages action of Harman, appellant maintains that the court "should have first reduced all pre-April 23, 2003 billings by two thirds,"[9] then "cut the remainder in half" to account for the unsuccessful equitable claims, and finally "cut the remainder in half again" to reflect that only part of the state law damages claim was successful. Appellant points out that the damages awarded to Harman were limited to the one-year delay in his appointment caused by "the course of conduct of the EEO manager in approving provisional appointments." (See *Harman, supra,* 136 Cal.App.4th 1279, 1311.) Thus, claims the City, much of respondent's attorneys' discovery efforts "did not involve these narrow subjects," and should not be included in the attorney fee award. Based upon the proposed

---

[8] If not for the concession, the court would have found the claims related.

[9] April 23, 2003, is the date the claims of the other plaintiffs were finally removed from the case.

"one-third, one-half, one-half" formula, the City submits that the total award for the pre-April 23, 2003 stage of the litigation "should have been $74,833."

For the post-April 23, 2003 billings—that is, following the remand which limited Harman's action to his single claim for damages—the City submits that his recovery of attorney fees should be limited to "one-twentieth of the fees he now seeks for this period." The City's proposed "one-twentieth" formula is based on the fact that Harman recovered ($30,300) only "one-twentieth of what he demanded" ($600,000). The City complains that Harman "incurred $344,678 in fees for a net gain of $5,300" above the "pre-trial settlement offer" of $25,000. For the fees on appeal, the City requests that we deny any fees "incurred in pursuit of the fee award," particularly since "there never would have been an appeal (or a trial for that matter) had Harman and his attorneys taken a reasonable position at settlement."

While percentage reductions may in some cases be appropriate, the adjustments proposed by the City are inconsistent with the very expansive *Hensley* standard of related and unrelated claims. As we remarked in *Harman, supra*, 136 Cal.App.4th 1279, 1310–1311, under *Hensley*, although " 'there is no certain method of determining when claims are "related" or "unrelated," ' " the essential inquiry is "whether the 'different claims for relief . . . are based on different facts and legal theories.' [Citation.] If so, they qualify as unrelated claims. Conversely, related claims 'will involve a common core of facts or will be based on related legal theories.' [Citation.]" " 'Under this analysis, an unsuccessful claim will be *un*related to a successful claim when the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.' [Citations.]" (*Harman, supra*, at p. 1311; see also *Schwarz v. Secretary of Health & Human* (9th Cir. 1995) 73 F.3d 895, 903; *O'Neal v. City of Seattle* (9th Cir. 1995) 66 F.3d 1064, 1068–1069.)

Thus, rather than follow a formulaic reduction based on the number and percentage of unsuccessful claims, as the City seems to suggest, we must examine the nature and "course of conduct" upon which the claims are based, as did the trial court. (*Harman, supra*, 136 Cal.App.4th 1279, 1311.) The trial court characterized the essence of the relief requested as designed "to deter illegal discrimination in promotions at the Airport," and we do not find that characterization to be an abuse of discretion. While in *Harman* we stated that the successful damages claim was limited in its scope to the policy decision on approval of provisional appointments, the entire course of conduct that respondent attempted to remedy may be more broadly defined to include the City's discriminatory employment practices and policies. And the effort to prove racially discriminatory purposes associated with his provisional appointment shared a common core of facts and legal theories with the

employment practices that governed permanent appointments, at least for purposes of the vast majority of the hours of service expended by counsel.

Also, the trial court's determination that the various claims against the City were inextricably intertwined, "making it 'impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units,' " is reasonably based upon the evidence in the record. (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111 [51 Cal.Rptr.2d 286], quoting *Fed-Mart Corp. v. Pell Enterprises, Inc., supra*, 111 Cal.App.3d 215, 227.) For the hours billed both before and after the remand on April 23, 2003, where the court could isolate the time spent on the individual claims, the fees were properly excised. Where the court considered the fees intertwined, the successful and unsuccessful claims were found related, as *Hensley* directs. For instance, the court approved of the reductions submitted by respondent's counsel for work done "on behalf of the other two plaintiffs," and imposed further reductions of time by one-quarter, although the court noted that the "vast majority of the work" would have "been necessary if Harman had been the only plaintiff." We conclude that the trial court did not abuse its discretion by determining that, with the exception of the reductions made, the attorney time expended through trial to pursue the remainder of the action was related to the time that reasonably contributed to the successful resolution of the damages claim, and declining to further apportion the attorney fee award. (*Erickson v. R.E.M. Concepts, Inc.* (2005) 126 Cal.App.4th 1073, 1085–1086 [25 Cal.Rptr.3d 39]; *Hospital Systems, Inc. v. Office of Statewide Health etc. Development* (1994) 25 Cal.App.4th 1686, 1692 [30 Cal.Rptr.2d 922].)

As to the fees awarded for work done on the prior appeal in *Harman* and after judgment in the total amount of $144,170.00, the court properly deleted the hours spent by the attorneys for the Pacific Legal Foundation on the unsuccessful petition for rehearing; the remaining time was not apportioned in any way.[10] The attorneys for Harman submitted billing entries which indicated that specific time was spent on the "merits" of the appeal, or on the attorney fee issue, or were "combined efforts" on both issues. While those designations were made, fees were nevertheless requested by respondent and billings were submitted for time spent on the unsuccessful issue on appeal of the propriety of the previous attorney fee award. Nothing in the record indicates that either the attorneys or the trial court excised entries that related solely to the attorney fee issue which resulted in a reversal of the first attorney fee award. On that separate, unrelated issue in the prior appeal respondent did not prevail. Respondent is incorrect when he asserts that the attorney fee award was not reversed in the *Harman* decision. The award of

---

[10] We asked the parties to submit supplemental briefing on the issue of apportionment of the fees related to the prior appeal, and they have done so.

attorney fees in respondent's favor was vacated in its entirety and the case was remanded with directions for the trial court to consider anew "the determination of a reasonable fee." (*Harman, supra,* 136 Cal.App.4th 1279, 1316.) The reversal of the attorney fee award and remand to the trial court for further proceedings means that on that issue of the appeal respondent was not the prevailing party. (See *Corder v. Gates* (9th Cir. 1996) 104 F.3d 247, 249–250.) The appeal, like the underlying action, was one in which limited success was realized. Thus, the failure of the trial court to make any effort to apportion the award of attorney fees on appeal to account for time spent on the unrelated and unsuccessful attorney fees claim in the prior appeal was error under *Hensley.* The remainder of the award for work done on the appeal and following the remand, including the billing submissions for "combined efforts" which were intertwined with the successful claim on appeal, was not an abuse of discretion.

## B.   *Reductions for Degree of Success.*

The second step of the *Hensley* analysis focuses upon whether additional adjustments in the fee award must be made to account for the partial degree of success achieved. "[U]nder *Hensley,* a partially prevailing party is not necessarily entitled to all incurred fees even where the work on the successful and unsuccessful claims was overlapping." (*Mann v. Quality Old Time Service, Inc., supra,* 139 Cal.App.4th 328, 344.) "[T]he court makes further reductions when plaintiffs' success on any remaining interrelated unsuccessful and successful claims was limited." (*Gates v. Deukmejian, supra,* 987 F.2d 1392, 1404.)

The City claims that even if the "time was properly eliminated for the unsuccessful claims, a fee award of $1,113,905.40 was still an abuse of discretion under the second step of *Hensley.*" The City again calls our attention to the profound disparity between the compensatory damages recovered and the attorney fees awarded, and refers to our observation in *Harman, supra,* 136 Cal.App.4th 1279, 1314, that the cases "often display a marked restraint in approving attorney fee awards in amounts that constitute a high multiple of damages."

Here, the trial court exercised its discretion by considering an "adjust-ment to the lodestar" according to the "second step of *Hensley*" to account for the "lack of overall success." In evaluating the degree of success, the court followed the directions recited in *Harman.* In settling on a reasonable amount of fees, the court specifically expressed awareness that the award was "far greater than the amount of monetary damages awarded." Thus, we cannot find an abuse of discretion based upon the failure of the court to understand or apply the correct legal standards to determine the amount of

the award. (Cf. *Robbins v. Alibrandi* (2005) 127 Cal.App.4th 438, 452 [25 Cal.Rptr.3d 387]; *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 634 [71 Cal.Rptr.2d 632].) "California law allows the trial court to reduce . . . attorneys' fees award based on the results . . . obtained, or not to reduce the fee award, as the trial judge finds is appropriate in the exercise of . . . discretion." (*Beaty v. BET Holdings, Inc., supra,* 222 F.3d 607, 610.)

The court declined to make further adjustments under the second step of *Hensley* for a number of stated reasons. First, the court took into account that the lodestar figure had already been significantly reduced under the first step of the analysis, and determined that additional reductions for lack of success "would amount to doubly reducing the fees." The court also determined that the fee award was "not out of proportion to the overall success and significance of the litigation, and is commensurate to Plaintiff's long, hard-fought struggle for vindication of his constitutional right." Harman's "primary purpose" in pursuing the litigation, the court stated, was to obtain his promotion and prevent the City from continuing to implement the challenged discriminatory employment practices, which the court found occurred "because of Plaintiff's lawsuit." In addition to a "special verdict" from the jury that found the City's policy "intentionally discriminat[ed] against White males in promotional opportunities at the San Francisco International Airport," the court recognized the additional "benefit to the public via the published opinion establishing that employers may not shield themselves against liability for illegal discriminatory conduct by its employee when it has, in fact, a policy or practice of delegating final decisionmaking authority in the realm of the conduct at issue to that employee."

Finally, in response to our admonition in *Harman, supra,* 136 Cal.App.4th 1279, 1316, to consider "the settlement offer in evaluating the benefit to plaintiff of the attorney's services at trial," the court noted that respondent succeeded on the only count taken to the jury, and "the jury awarded 78% of the highest amount of actual damages requested." For that reason the court declined to reduce the award for Harman's refusal to accept the City's settlement offer and his minimal additional recovery after trial.

■ We agree with appellant that the trial court somewhat overvalued the "public benefit" conferred by the present action (*Harman, supra,* 136 Cal.App.4th 1279, 1316), but we cannot fault the trial court's ultimate reasoning. The courts have often expressed the principle that a slight monetary recovery will not control assessment of the appropriate amount of attorney fees where a constitutional right is vindicated or a significant public benefit conferred. (See *Riverside v. Rivera, supra,* 477 U.S. 561, 574; *Duckworth v. Whisenant* (11th Cir. 1996) 97 F.3d 1393, 1399, appen.;

*Morales v. City of San Rafael, supra,* 96 F.3d 359; *Butler v. Dowd, supra,* 979 F.2d 661, 675–676; *Norman v. Housing Authority of City of Montgomery* (11th Cir. 1988) 836 F.2d 1292, 1302; *Pacific West Cable Co. v. City of Sacramento, Cal.* (E.D.Cal. 1988) 693 F.Supp. 865, 871–872; *Harman, supra,* 136 Cal.App.4th 1279, 1316; *Choate v. County of Orange, supra,* 86 Cal.App.4th 312, 325.) A "court should not reduce the lodestar merely because the prevailing party did not receive the type of relief that it requested. [Citations.] This is especially true in civil rights cases." (*Gates v. Deukmejian, supra,* 987 F.2d 1392, 1404.) In "civil rights cases" such as this one which seek to vindicate important public interests whose value transcends the ultimate dollar amounts awarded to civil rights claimants in compensation, "a trial court does not under California law abuse its discretion simply by awarding fees in an amount higher, even very much higher, than the damages awarded," where successful litigation causes conduct which the civil rights statutes were enacted to deter to be exposed and corrected. (*Beaty v. BET Holdings, Inc., supra,* 222 F.3d 607, 612–613, citing *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 445 [94 Cal.Rptr.2d 143] (*Vo*).)[11] "Thus, 'a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time.' [Citation.]" (*Gates, supra,* at p. 1404, fn. 13.)

Although if the decision had been presented to us in the first instance we may not have awarded attorney fees that so far exceed the recovery of damages, neither do we find it an abuse of discretion. The trial court here presided over the entire lengthy proceedings, including two remands after prior appeals, and undertook a thorough, considered evaluation of the value of the legal services provided. "[S]ince the trial judge was presumably in the best position to determine the value of the services rendered by counsel, '. . . we may not disturb the judge's decision on this point unless we are convinced it was clearly wrong.' " (*Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615, 622 [98 Cal.Rptr.2d 388].) "The court may consider the nature of the litigation, its difficulty, the amount involved in the litigation, the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, the attorney's learning and experience, the intricacies and importance of the litigation, the labor necessary, and the time consumed. [Citation.] We will reverse only if the amount awarded is so

[11] *Beaty v. BET Holdings, Inc.* and *Vo v. Las Virgenes Municipal Water Dist.* were cases brought under the FEHA. In *Vo,* the jury found that the defendant was liable for harassment based on race, awarding the plaintiff $40,000 in compensatory damages, an amount later reduced to $37,500 by stipulation. The trial court then awarded the plaintiff $470,000 in attorney fees. Despite the fact that the fee award was more than 10 times greater than the plaintiff's damages, the court concluded that the fee was justified because the defendant took a rigid nonsettlement posture, and because the award served the FEHA's objectives of exposing and deterring discrimination. (*Vo, supra,* 79 Cal.App.4th 440, 445, 448.)

large or small that we are convinced it is clearly wrong." (*Olson v. Cohen* (2003) 106 Cal.App.4th 1209, 1217 [131 Cal.Rptr.2d 620].) "The abuse-of-discretion standard requires us to uphold a ruling which a reasonable judge might have made, even though we would not have ruled the same and a contrary ruling would also be sustainable. We cannot substitute our own judgment." (*People v. Woods* (1993) 12 Cal.App.4th 1139, 1153 [15 Cal.Rptr.2d 906]; see also *Stull v. Sparrow* (2001) 92 Cal.App.4th 860, 864 [112 Cal.Rptr.2d 239].) "The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination." (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134 [94 Cal.Rptr.2d 448].)

We do not find that the award at issue here reaches the level of an abuse of discretion. The trial court handled this case for several years, and upon remand engaged in a rigorous and thorough procedure to review the attorney billings. We are not in a position to second-guess the court's factual findings, nor are we persuaded that the attorney fees were awarded arbitrarily with no reason or justification. We therefore conclude that after the adjustments made according to the first step of *Hensley*, the trial court did not err by failing to further reduce the award to account for respondent's lack of success.

In conclusion, we borrow from Justice Powell's observations in his concurring opinion in *Riverside*: "On its face, the fee award seems unreasonable. But [we] find no basis for this Court to reject the findings made and approved by the [court] below." (*Riverside v. Rivera, supra*, 477 U.S. 561, 581 (conc. opn. of Powell, J.).) Although we may have exercised our discretion differently, we "cannot conclude that the detailed findings made by the [trial court] . . . were clearly erroneous, or that the [trial court] abused its discretion in making this fee award." (*Id.* at p. 586.)

## DISPOSITION

Accordingly, that part of the attorney fee award based upon billings submitted for work performed on the unsuccessful attorney fee issue in the prior appeal is reversed. The case is remanded to the trial court for the limited purpose of deleting from the total award those amounts that relate solely to billing for work done on the attorney fee issue in *Harman, supra*, 136 Cal.App.4th 1279. In all other respects the judgment is affirmed.

The parties are to bear their own costs on appeal. And in light of our conclusion that the attorney fee award must be reduced in part, and in an effort to bring this protracted litigation to a close, we exercise our discretion to find that neither appellant nor respondent is the prevailing party in this appeal for purposes of recovery of attorney fees for work associated with this appeal.

Marchiano, P. J., and Margulies, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 12, 2008, S160463. Moreno, J., did not participate therein. Baxter, J., and Corrigan, J., were of the opinion that the petition should be granted.