Filed 9/20/23  Kinkade v. Aguirre CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CYNTHIA SIEBERT KINKADE, | D080638 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2019-00040608-CU-HR-CTL) |
| RICHARD AGUIRRE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Richard Aguirre, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

This case involves a dispute between next door neighbors in a relatively confined San Diego beach community.  Unfortunately, the disagreement became contentious enough to result in mutual restraining orders.  One of the parties appeals, claiming his attorney's impaired speech deprived him of a fair trial.  We affirm because the trial judge made it clear on the record that he found the attorney both intelligible and competent.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant Richard Aguirre and the Kinkade family (plaintiff Cynthia, her husband Charles, and their two boys)[1] have lived next door to each other for over a decade. Beginning in 2019,[2] the Kinkade children's backyard play increasingly irritated Richard. The adults made unsuccessful attempts to address the issue, and the controversy eventually destroyed their ability to constructively resolve the problems they faced as neighbors.[3]

Richard was bothered when the boys played lacrosse or used the large trampoline in their back yard. Because the fence between the two houses is not very tall, the children could see into Richard's yard when bouncing on the trampoline. When playing lacrosse, they sometimes lost the balls over the fence.[4]

Over time, Richard seems to have perceived these incidents as intentional attacks on his privacy and security, blaming Charles for allegedly

---

[1]  Because there are multiple people involved in this case with the same last name, we refer to them by their first names throughout, intending no disrespect.

[2]  The record in this case does not include a transcript of the trial, and we presume it was not recorded. This court is in possession of the Clerk's Transcript and a Settled Statement in lieu of a reporter's transcript, so we gather the facts as best we can from those documents.

[3]  Their previous years living as neighbors were not without conflict. In particular, disputes about loud music, noise from house projects, parties, guests, drug use, and pets had been sources of contention between the two houses in the past. Some of those concerns lingered in the acute conflict that started in 2019.

[4]  It is clear from the record that Cynthia tried to come up with solutions to increase privacy between the two properties, decrease the lacrosse balls that might go over the fence, and otherwise address her neighbor's concerns, all to no avail.

inciting the children. He began recording the Kinkades, including the children playing in the backyard. At times, this included the children's neighborhood friends who came over to play. These videos, some of which were submitted as part of the record in this appeal, appear to be Richard's attempt to document his perceived persecution. Among other things, they demonstrate that (1) the relationship between Charles and Richard became particularly contentious, (2) Richard's recording of the Kinkades was rather extensive, and (3) Charles responded by taking videos of Richard.

There is less in the record about Shauna, Richard's sister, who also lives at the property. But in March 2019, she obtained a temporary restraining order against Charles.[5] Her specific dispute with Charles is less clear than Richard's, but she and Charles were initially able to resolve the issue in April 2019 by privately agreeing to limit themselves to non-negative contact. In July, however, Shauna refiled a restraining order request alleging that Charles violated their non-negative contact agreement. Charles disputed the assertion.

By August, Cynthia had become increasingly frightened by what she perceived to be Richard's fixation on her family, his videotaping of her children and their friends, and his verbal aggression directed toward her children and herself. As a result, she filed a request for a civil harassment restraining order against Richard. Both parties obtained counsel, and as the action proceeded toward trial, both sides requested multiple continuances for various reasons. All told, the trial was delayed until February 8, 2022.

---

[5] Temporary civil harassment restraining orders have a lower burden of proof than their more permanent counterparts, which must be supported by clear and convincing evidence. (Code Civ. Proc., § 527.6, subds. (d) and (i).)

At some point, Shauna's action against Charles was joined to Cynthia's action against Richard, making Charles a cross-defendant.

Cynthia and Richard each testified at the trial before Judge Kenneth Medel. Cynthia detailed an event in April 2020 where Richard verbally threatened her and her children, broadly stating that both she and her children were afraid of Richard and that conflicts with him had affected the mental health of her whole family. Judge Medel commented that he found her testimony credible. He added that Richard's behavior was sufficiently aggravated to meet the standard for issuing a restraining order. Richard denied any aggression, and testified that Cynthia's accounts were pure lies, fabricated for the purpose of cajoling Shauna to drop her request for a restraining order against Charles.

At some point after the bulk of the evidence had been presented, Judge Medel paused the hearing and met with both attorneys in his chambers. He impressed on them that he had heard enough to know he would likely grant both restraining orders requests—unless the remaining evidence deviated substantially from what he had already heard. He wanted to make sure the parties appreciated the seriousness of that outcome and give them a final opportunity to consider the possibility of compromise before the court entered a judgment. Because at least one party preferred a litigated resolution, the hearing continued. Apparently believing that the contours of the evidence did not change, the judge granted both restraining orders.[6]

---

[6] Because our record lacks a copy of the order that restrains Charles's contact with his neighbors, we do not have details about it. The order restraining Richard includes Cynthia, Charles, and their two sons as protected parties. Shauna is not named.

4

Following the court's ruling, Richard filed a motion for a new trial in March 2022. Initially self-represented, he eventually obtained new counsel who helped him refine his legal theory. As amended, the basis for his motion was that he was deprived of a fair trial under Code of Civil Procedure section 657, subdivision (1)[7] due to medical issues that his attorney at the hearing, Anthony Solare, was dealing with. Richard alleged that Solare was unable to competently represent him after being injured in a bicycle accident, and apparently suffering from "brain trauma that made his speech impaired and unintelligible." The court was aware of this injury and had granted a continuance in January 2022 to enable Solare to recover—but by Richard's account, that was not enough time for his attorney's condition to improve sufficiently. In May 2022, the judge heard arguments on the new trial motion and denied it. Richard then appealed. Cynthia did not file a brief in response.

## DISCUSSION

Richard offers two arguments on appeal.[8] He primarily advances the same contention he made on his motion for new trial—that Solare's slurred

---

[7] Further undesignated statutory references are to the Code of Civil Procedure.

[8] At oral argument Richard attempted to add a third argument, asserting that he was denied due process because the trial court allowed him insufficient time to present his case. His brief contains only two arguments, and the term "due process" does not appear anywhere. We do not consider points raised for the first time at oral argument. (*Let Them Choose v. San Diego Unified School Dist.* (2022) 85 Cal.App.5th 693, 700, fn. 1.)

speech deprived him of a fair trial under section 657, subdivision (1).[9]  He asks us to reverse the judgment and grant him a new trial on this basis.[10]

A central problem with Richard's claim is that it is contradicted by Judge Medel's account of what happened, which he took pains to note in the court's Addendum to the Settled Statement.  The judge wrote that he was aware of Solare's medical condition, had extended additional time before trial to account for it, and found counsel to be both up to the task of representing Richard and understandable to the court at the February 2022 trial.  Specifically, he explained that "[Richard's] attorney participated fully, thoughtfully, and intelligently in the proceedings . . . [where] [h]e examined and cross-examined witnesses, made proper objections, responded appropriately to objections, and made a thoughtful closing statement."  To the extent Solare's speech continued to be impacted by medical issues, Judge Medel explained he was still "quite understandable," and the judge was "confident" that the attorney was "competent" and "appropriate" in his representation of Richard.

Given this record, we cannot conclude that the trial court erred in denying Richard's motion for a new trial.  Our standard of review in this context is well settled, and very deferential.  (*Lane v. Hughes Aircraft Co.*

---

9    Section 657 permits the trial court to order a new trial for various reasons, including if it finds an "[i]rregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial."  (§ 657, subd. (1).)

10    He also asks us to "pursue criminal perjury charges against Cynthia and Charles Kinkade for knowingly making false claims to the court."  This request falls well outside of our role.  Even in reviewing criminal cases, the appellate court does not interfere with, let alone initiate, criminal prosecutions, which is the responsibility of the executive branch of government.

(2000) 22 Cal.4th 1152, 411–412.) To reverse the denial of a motion for new trial, we would need to be convinced that the trial court had abused its discretion. (*Dilger v. Whittier* (1917) 33 Cal.App. 15, 18.) A court does not abuse its discretion unless it makes a decision that no reasonable judge could reach. (See, e.g., *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 428; see also *Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298, 305 [trial court's "decision to deny a motion for new trial should not be disturbed unless plainly wrong"].)

Here, there is nothing in the record to convince us that Judge Medel made such a mistake. To the contrary, the court fully considered the effect of Solare's medical condition on his ability to represent Richard, and ultimately concluded that Solare was able to do so. We have no reporter's transcript to suggest otherwise.

Perhaps more to the point, given that Richard's claim is based on speech issues Solare was having at the time, the court indicated it *understood* what Solare said. In a bench trial such as this one, that fact is determinative. It demonstrates that Solare's impaired speech did *not* prevent him from advancing Richard's interests at trial. Judge Medel listened to Solare and was able to fully consider the evidence and arguments he presented on Richard's behalf before making his decision. Moreover, to the extent Richard argues that Solare mishandled his case by not presenting certain evidence or making particular arguments, there is no cognizable claim of ineffective assistance of counsel in a civil action. (*Mendoza v. Superior Court* (2021) 65 Cal.App.5th 988, 1002.)

Richard also argues there was no substantial evidence to support the trial court's finding that he harassed Cynthia. In doing so, he asks us to reevaluate who told the truth at trial, teeing up the inconsistencies between

7

his own testimony and Cynthia's. Again, unfortunately, he misperceives our role.  As an appellate court, "[w]e do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses."  (*People v. Pre* (2004) 117 Cal.App.4th 413, 421.)  Here, Judge Medel already determined that he thought *Cynthia* was credible, not Richard, and we are obligated to defer to the trial court's assessment of credibility and factual findings. (*Nissan Motor Acceptance Cases* (2021) 63 Cal.App.5th 793, 817 ["When the exercise of the court's discretion depends on how it resolves questions of fact, we must defer to the court's ' "credibility determinations and findings on questions of . . . fact." ' "].)

## DISPOSITION

The judgment is affirmed.

DATO, Acting P. J.

WE CONCUR:

DO, J.

KELETY, J.