Filed 12/23/13  Staley v. Carlson CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RONALD STALEY et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>JAMES CARLSON et al.,<br><br>        Defendants and Respondents. | A133115<br><br>(Alameda County Super. Ct. Nos.<br>  VG08416163, VG09448925) |

Appellants Ronald and Janice Staley hired James Carlson and Elizabeth Sheridan to be caretakers of a dog kennel property. As compensation, the Staleys provided housing to the couple in a mobile home on the property. After a number of years, the Staleys terminated Carlson's and Sheridan's employment. When the couple refused to vacate the mobile home, the Staleys obtained an unlawful detainer judgment for possession and holdover rent. When they refused to pay the rent judgment, the Staleys filed suit against Carlson's father, who had signed a guarantee, seeking not only the holdover rent but also compensation for damage Carlson and Sheridan caused to the mobile home. Carlson and Sheridan, in turn, filed a wage and hour lawsuit against the Staleys claiming the mobile home was uninhabitable and they had received zero compensation for their work.

The two lawsuits were consolidated, and when the dust settled, the Staleys had prevailed in their lawsuit against the senior Carlson, recovering damages and attorney fees. Carlson and Sheridan also recovered, in limited part, on their claims for unpaid

1

minimum wages and waiting time penalties, but did not prevail on their habitability theory or on numerous other claims. Thus, while Carlson and Sheridan had sought close to $400,000 in wages, Labor Code penalties, and related interest, as well as additional damages for emotional distress and the allegedly uninhabitable home, they recovered approximately $40,000 in minimum wages, waiting time penalties and interest. The parties then filed fee motions. The Staleys sought fees for prevailing on the habitability claims; Carlson and Sheridan, for prevailing on their minimum wage claims. The trial court denied fees to the Staleys and awarded the full amount of fees Carlson and Sheridan sought, $288,893.20.

The Staleys contend the trial court erred as a matter of law in denying them fees in connection with the habitability claim, and abused its discretion by failing to make any adjustment to the amount of fees awarded to Carlson and Sheridan to reflect their limited success. We conclude the fee order must be reversed and the matter remanded for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2000, the Staleys entered into two written agreements with Carlson and Sheridan. The first was an employment agreement. The Staleys hired the couple to "fulfill the duties of 'caretaker for kennel' " and to provide "general yard and vehicle maintenance at the real property located at 10577 and 10633 Dublin Canyon Rd." As compensation, the Staleys provided housing in a mobile home on the property. The second was a rental agreement whereby Carlson and Sheridan agreed to pay the Staleys $1,500 a month to rent 10577 Dublin Canyon Road. According to the Staleys, this was a "back up" in case of a breach of the employment agreement, and they had no intention to otherwise collect rent. Both agreements had a "prevailing party" attorney fees provision.

The Staleys also entered into a co-signer agreement with Donald Carlson, James Carlson's father. The senior Carlson agreed to guarantee payment of any "monetary

2

damages suffered by [the Staleys] including . . . actual attorney's fees incurred in the enforcement of" the rental agreement or the co-signer agreement.

In 2008, the Staleys terminated Carlson's and Sheridan's employment. When the couple refused to vacate the mobile home, the Staleys brought an unlawful detainer action. The Staleys prevailed and recovered a judgment of possession and $2,700 in holdover rent.

Apparently unable to collect on the unlawful detainer judgment, the Staleys sued the senior Carlson in October 2008. In addition to the holdover rent, the Staleys sought to recover from Carlson damages his son and Sheridan allegedly caused to the mobile home—thus, they sought to recover from Carlson a total of $17,533.46, as well as attorney fees pursuant to the co-signer agreement.

Six months later, in April 2009, Carlson and Sheridan sued the Staleys and their business entity, Scherzar Shepards, alleging multiple causes of action for unpaid wages: (1) failure to pay minimum wages, (2) failure to pay overtime wages, (3) failure to pay contract wages, (4) failure to timely pay wages under Labor Code sections 201 through 203, (5) failure to furnish wage statements under Labor Code section 226, (6) unlawful deductions from wages under Labor Code section 221, and (7) unlawful business practices under Business and Professions Code section 17200. Carlson and Sheridan also alleged several causes of action regarding the mobile home: (8) negligence in maintaining the mobile home, (9) failure to provide a habitable dwelling,[1] (10) intentional

---

[1] In their ninth cause of action, captioned "Failure to provide a habitable dwelling Civil Code §§ 1929 and 1941 et seq.," Carlson and Sheridan alleged "Civil Code sections 1929 and 1941 require that a landlord put and keep his or her rental unit in a condition fit for human occupancy. Further, pursuant to Civil Code section 1942.4, a landlord may not collect rent on a premise which is substantially in breach of his obligation . . . and he may be legally penalized if he does." They further alleged the mobile home had problems with electricity, lighting, water, heating, doors, and vermin (such as mice, rats, and raccoons), and claimed they were entitled to the "recovery of all rental fees . . . , actual damages, special damages, interest, attorneys' fees, costs, and penalties, under California Civil Code section 1942.4."

infliction of emotional distress, and (11) negligent infliction of emotional distress.[2]  In their prayer for relief, Carlson and Sheridan sought unpaid wages, any unwittingly "paid" rent on the mobile home, liquidated damages under Labor Code section 1194.2, civil penalties under Labor Code section 558, restitution and "penalties" in connection with the unfair business practices cause of action, waiting time penalties under Labor Code section 203, other actual damages including those for emotional distress, punitive damages, prejudgment interest, costs, and attorney fees under Labor Code sections 218.5, 226, and 1194, and Code of Civil Procedure section 1021.5.

Six months after that, in September 2009, at Donald Carlson's request, the Staleys' action against him, and Carlson's and Sheridan's action against the Staleys, were consolidated.

The settlement conference statement Carlson and Sheridan filed a year later, in September 2010, somewhat clarified their claims.  They asserted they worked substantial hours for the Staleys but were paid nothing, not even a minimum wage, because the mobile home (their supposed compensation) was uninhabitable and worthless.  In interrogatory responses provided the preceding month, Carlson claimed unpaid wages of $60,017.28 (for 5,568 "regular hours" of work at between $10.42 and $13.89 per hour) and Sheridan claimed unpaid wages of $68,017.92 (for 6,144 "regular hours" of work at between $10.42 and $13.89 per hour).  The couple also claimed they were entitled to unpaid overtime at an average of 4.36 hours per day ($62,653.56 for 3,884 hours for Carlson, $68,029.02 for 4,142 hours for Sheridan), $6,007.50 each in waiting time penalties, and penalties for failure to furnish wage statements ($2,850 for Carlson, $3,150

_____

[2]  In their eighth and eleventh causes of action (for "negligence" and "negligent infliction of emotional distress"), Carlson and Sheridan alleged the Staleys "failed to exercise ordinary care in the management" of the mobile home and sought damages to their "nervous system and person."  In the tenth cause of action for "intentional infliction of emotional distress," Carlson and Sheridan alleged the Staleys refusal to provide a habitable dwelling resulted in severe emotional distress.

4

for Sheridan). All told, Carlson claimed approximately $133,138 in wages and penalties, and Sheridan about $145,204, for a total of about $278,342. When interest was added as of the date of the interrogatory responses, Carlson sought about $180,000 and Sheridan about $200,000, a total of about $380,000.

The Staleys, in their settlement conference statement, disputed liability and claimed Carlson and Sheridan worked fewer hours than they claimed and lived in the mobile home and derived benefit from it without complaint for years.

At trial, Carlson admitted he suffered no emotional distress, and at the close of his and Sheridan's case, the trial court granted nonsuit as to his emotional distress claims (the tenth and eleventh causes of action). Sheridan then dropped her intentional infliction claim (the tenth cause of action), and the jury was instructed the only emotional distress claim remaining was Sheridan's claim for negligent infliction of emotional distress.

In connection with Carlson's and Sheridan's habitability claims, the court gave two special instructions. The first was a modified version of CACI No. 4320, an instruction designed for use in an unlawful detainer case when the defendant raises the implied warranty of habitability as a defense to failure to pay rent. (CACI No. 4320.) The second was entitled "Damages—Breach of the Implied Warranty of Habitability" and told the jury "[t]he measure of damages is the difference between the fair market value of the mobile home . . . and the rental value of the mobile home as stated in the lease."

The jury was also provided with a number of special verdict forms. In connection with the Staleys' claims against Donald Carlson, the jury found he had entered into a valid guarantee agreement, was in breach of the agreement, and owed the Staleys $7,254.12.

In connection with Carlson's and Sheridan's claims against the Staleys, the jury found the latter liable for nonpayment of minimum wages (first cause of action). The jury found Carlson worked 624 hours in 2005, 624 hours in 2006, 546 hours in 2007, and

5

zero hours in 2008— all at minimum wage, not the higher "contract" wage he and Sheridan had claimed (third cause of action). The jury found Sheridan worked 1,560 hours in 2005, 1,560 hours in 2006, 1,872 hours in 2007, and 285 hours in 2008—again, all at minimum wage. When asked, however, how many of those hours between 2006 and 2008 (the years for which recovery was allowed under the Labor Code) had not been properly compensated, the jury determined Carlson was owed for 123 hours in 2006, 45 hours in 2007, and zero hours in 2008. It similarly determined Sheridan was owed for 1,059 hours in 2006, 1,371 hours in 2007, and 121 hours in 2008. Thus, the jury found the Staleys owed $1,164.06 to Carlson and $18,394.74 to Sheridan for unpaid minimum wages.

The difference in the hours the two were found to have worked, and the hours they were found to have been uncompensated, is the result of the credit for housing the jury awarded. The jury was instructed as to the allowable credit (see Cal. Code Regs. tit. 8, § 11000; Lab. Code, § 1182.13.), and it duly awarded the maximum housing credit it could provide. Thus, the jury rejected Carlson's and Sheridan's claim that the mobile home was inhabitable and they therefore had received no compensation for their work.[3]

The jury also rejected Carlson's and Sheridan's claims for unpaid overtime (second cause of action) and their contract wage claims (third cause of action) having found they were entitled to only minimum wages, and also rejected the remaining negligence and negligent infliction claims advanced by Sheridan (the eighth and eleventh

---

[3] Carlson and Sheridan did not raise the housing credit limit, set forth in the Industrial Wage Commission's minimum wage order, until well after trial started. When the Staleys' counsel, at the final hearing on jury instructions, accused counsel for Carlson and Sheridan of improperly withholding reference to the wage order in relevant interrogatory answers, in their trial brief, and in their initial draft jury instructions, counsel responded he had not discovered "this industrial wage order until very late in the game, and maybe we should have known about it, but the fact is we didn't."

causes of action).[4]  In addition to rejecting their no-compensation habitability theory advanced in connection with their wage claims, the jury also returned a special verdict against them on what had been presented as separate habitability claims.  In ruling against them on these claims, the jury found the mobile home was not in a habitable condition, but the couple's own treatment of the home barred recovery and the condition of the home did not reduce its fair market value.

The trial court entered judgment consistent with the jury's verdicts on February 25, 2011.  Carlson was awarded $1,164.06 in unpaid minimum wages, $450 in waiting time penalties, and $830.25 in restitution,[5] plus interest.  Sheridan was awarded $18,394.74 in unpaid minimum wages, $1,440 in waiting time penalties, and restitution of $7,148.25, plus interest.  The judgment specified entitlement to attorney fees would be determined by motion.

The Staleys got their fee motion on file first, claiming they were the prevailing parties on the habitability claims and entitled to fees under Civil Code section 1942.4, subdivision (b)(2).  The following day, Carlson and Sheridan filed their motion for fees, claiming they were prevailing parties on the wage and hour claims and entitled to fees under Labor Code sections 1194 and 218.5.  They also opposed the Staleys' fee motion, asserting Civil Code section 1942.4, subdivision (b)(2), was inapplicable.  In response, the Staleys alternatively claimed they were entitled to contractual fees under the fee provision in the rental agreement and Civil Code section 1717.

---

[4]  As far as the record discloses, the jury was never asked to make findings or rendered verdicts in connection with Carlson's and Sheridan's claims for unfurnished wage statements (fifth cause of action) or wage deductions (sixth cause of action).

[5]  The court awarded as restitution under Business and Professions Code section 17200 the amount of 2005 minimum wages Carlson and Sheridan were precluded from recovering under the Labor Code by the applicable statute of limitations.  This restitution is not challenged on appeal.

7

The trial court issued its decision on attorney fees on August 3, 2011. The court first addressed the Staleys' claim. The court recognized section 1942.4, subdivision (b)(2), would authorize fees if it applied, but concluded Carlson and Sheridan had advanced "common law," not statutory, habitability claims. The court acknowledged it was "difficult to determine" the basis for Carlson's and Sheridan's habitability claims, and ultimately categorized them as a common law "tort" claims for "two reasons." First, they had sought emotional distress damages.[6] Second, "neither party asked the court to instruct the jury on all elements of a claim under Civil Code section 1942.4."[7] The court said nothing about the Staleys' alternative claim for contractual fees, presumably because it had ruled the habitability claims were tort claims.

The court next addressed Carlson's and Sheridan's fee request. It found they were "prevailing parties pursuant to Labor Code sections 218.5 and 1194," and then discussed several factors relevant to determining the amount of a reasonable fee. The court concluded all of Carlson's and Sheridan's claims were based on a common set of facts, making apportionment between successful and unsuccessful claims "not required, practical, or desirable." It concluded Carlson and Sheridan had achieved limited success. It further concluded, however, their limited success was wholly counterbalanced by the fact their attorney was handling the case on a contingency basis. The court therefore awarded the full amount of fees they requested, $288,893.20.

---

[6] As we have recited, however, Carlson and Sheridan sought emotional distress damages only in connection with their negligence and emotional distress claims.

[7] There are several requisite elements to a statutory habitability claim. (§ 1942.4, subd. (a).) "One . . . is that a government official must have given the landlord written notice of the substandard condition . . . ." (*Fairchild v. Park* (2001) 90 Cal.App.4th 919, 935, fn. 3 (*Fairchild*).) Another is that the landlord must thereafter fail to remedy the condition within a reasonable period of time. (§ 1942.4, subd. (a)(3).) Carlson and Sheridan did not present evidence of either, nor did they request instructions pertaining to a statutory habitability claim.

8

*Attorney Fees on the Habitability Claims*

As we have recounted, the Staleys initially sought attorney fees as the prevailing parties on the habitability claims under Civil Code section 1942.4, subdivision (b)(2). This subdivision provides that the party prevailing in a habitability action brought under subdivision (b)(1) of the statute "shall be entitled to recovery of reasonable attorney's fees and costs of suit." (Civ. Code, § 1942.4, subd. (b)(2).) While Carlson's and Sheridan's ninth cause of action was, indeed, captioned "Failure to provide a habitable dwelling Civil Code §§ 1929 and 1941 et seq.," and they expressly sought damages, penalties, fees and costs "under California Civil Code section 1942.4," they made no attempt to prove the requirements necessary to recover under the statute. (See Civ. Code, §1942.4, subd. (a).) Accordingly, by the time their habitability claims went to the jury, the claims no longer tracked the language of the statute, and the trial court relabeled them as common law tort claims.

On appeal, the Staleys do not dispute that Civil Code section 1942.4, subdivision (b)(2), is inapplicable since Carlson and Sheridan made no attempt to prove the requirements of a statutory habitability claim. They do, however, dispute that the habitability claims that went to the jury were common law tort claims. They contend the claims sounded in contract and they are therefore entitled to fees under the fee provision of the rental agreement and Civil Code section 1717.

As we have noted, the Staleys alternatively sought contractual fees in the trial court in their reply memorandum, after Carlson and Sheridan disavowed the allegations of their complaint and asserted they had not pursued statutory habitability claims. Carlson and Sheridan thus contend, as a threshold matter on appeal, that the Staleys waived any right to contractual fees, having raised the issue for the first time in their reply memorandum. The record does not indicate Carlson and Sheridan ever claimed waiver in the trial court, or that the trial court ever make such a ruling. In any case, we

9

may "grant relief based on pure issues of law, even though the same are raised for the first time on appeal." (*Sweat v. Hollister* (1995) 37 Cal.App.4th 603, 610, fn. 6, disapproved on another ground by *Santisas v. Goodin* (1998) 17 Cal.4th 599, 609, fn. 5 [considering alternate basis for fee award raised for first time on appeal].) The proper characterization of Carlson's and Sheridan's habitability claims presents such an issue of law, and they have had a full opportunity to address the issue in their briefing on appeal. We therefore turn to the merits of the trial court's ruling that the habitability claims that went to the jury were common law tort claims, outside the ambit of the attorney fees provision in the rent agreement.[8]

Until the 1970's, California did not recognize "habitability" as a separate legal claim. Instead, a tenant could invoke only the "repair and deduct" statutory scheme set forth in Civil Code sections 1941 through 1942.1 to reduce a rent obligation. "In general, these sections place a statutory duty of maintenance and repair upon lessors of residential property and authorize a tenant, after giving reasonable notice of 'dilapidations' to his landlord, either to quit the premises without further liability for rent or to repair the dilapidations himself and to deduct the cost of such repairs—up to one month's rent— from his rent. A 1970 amendment to section 1942 prohibits a tenant from using the 'repair and deduct' option more often than 'once in any 12-month period.' " (*Green v. Superior Court* (1974) 10 Cal.3d 616, 629 (*Green*).)

In *Green*, however, the Supreme Court concluded modern residential leases should be subject to ordinary contract principles and held "a warranty of habitability is implied by law in residential leases in California." (*Green, supra*, 10 Cal.3d at pp. 619, 624.) The court determined the limited "statutory 'repair and deduct' provisions of Civil Code

_____

[8] The Staleys do not dispute that the contractual fee provision authorizes attorney fees only in connection with contract claims and is not sufficiently broad in its language to also encompass tort claims arising out of the contractual relationship. (See generally *Santisas v. Goodin, supra*, 17 Cal.4th at pp. 608, 622–623, fn.9.)

10

section 1941 et seq. [did] not preclude this development in the common law." (*Id.* at pp. 620, 630–631.) Rather, the repair and deduct statute's "standards of 'tenantability' set out in Civil Code section 1941.1, though not strictly applicable . . . , [could] provide some helpful guidance in determining whether a landlord has satisfied the common law warranty of habitability." (*Id.* at p. 638, fn. 23.) The court specifically held in *Green* that a tenant can assert breach of the implied warranty of habitability as a defense in an unlawful detainer action. (*Id.* at pp. 620, 637.) Accordingly, the court recognized and applied the implied warranty of habitability in a contractual context, i.e., as a defense to a landlord's claim that the tenant is in breach of the lease agreement, entitling the landlord to terminate the agreement and regain possession of the premises.

Three years later, in *Quevedo v. Braga* (1977) 72 Cal.App.3d Supp. 1 (*Quevedo*), the Appellate Department of the Los Angeles Superior Court ruled a breach of the implied warranty of habitability not only can serve as a defense to an unlawful detainer action, but also can serve as the basis of an independent cause of action against the landlord for damages. (*Id.* at p. 7 ["the doctrine of implied warranty . . . [applicable] . . . to the contractual relationship created by the lease of a dwelling will support an independent cause of action for damages"].) The court identified the requisite elements of such a cause of action as follows: the existence of a material defective condition affecting the premises' habitability, notice to the landlord of the condition within a reasonable time after the tenant's discovery of the condition, a reasonable period of time for the landlord to correct the deficiency, failure to do so, and resulting damages. (*Id.* at pp. 7–8.) Damages in such a cause of action are "limited to . . . the difference between the rent paid during the duration of the unfit condition and the rent which would have been reasonable" given the state of the dwelling. (*Id.* at p. 8.) The court therefore allowed the tenants' first cause of action for breach of the implied warranty—seeking a rent abatement—to proceed. (*Id.* at p. 10.) The court rejected, however, the respondents' second cause of action for breach of the implied warranty—seeking damages for

11

discomfort and annoyance—since it sought tort, not contract, damages. (*Id.* at pp. 9–10.) In short, *Quevedo* recognized that the implied warranty of habitability is a contractual term and concluded a cause of action seeking contract damages can independently lie for its breach.[9] (*Id.* at p. 9.)

In *Stoiber v. Honeychuck* (1980) 101 Cal.App.3d 903 (*Stoiber*), the Court of Appeal considered whether an "action sounding in contract for breach of the warranty of habitability is the only remedy available against a landlord" who has allowed his or her property to fall into an uninhabitable state. (*Stoiber*, *supra*, 101 Cal.App.3d at p. 913.) The court noted *Green* "did not address the issue of damages for tortious injury such as discomfort, annoyance or mental anguish resulting from the breach of warranty." (*Id.* at p. 915.) It also noted that in *Quevedo* "the sole theory of liability alleged was the implied warranty of habitability; no cause of action in tort was pleaded." (*Stoiber*, at p. 916.)

After examining the "expansive rationale of *Rowland v. Christian* (1968) 69 Cal.2d 108" and application of the general negligence statute section 1714, the *Stoiber* court held "assuming appropriate pleadings of fact, a tenant may state a cause of action in tort against his landlord for damages resulting from a breach of the implied warranty of habitability." (*Stoiber, supra*, 101 Cal.App.3d at pp. 917, 918–919.) The court then considered whether the tenant could simply state a claim for "negligent violation" of section 1941.1, which sets forth a number of habitability standards, and concluded that was not analytically appropriate. (*Id.* at p. 922.) Rather, the court endorsed the traditional negligence approach, whereby a violation of section 1941.1, in tandem with Evidence Code section 669, can establish a rebuttable presumption of negligence. (*Stoiber*, at p 924, citing Evid. Code § 669 ["The failure of a person to exercise due care

---

[9] In *Knight v. Hallsthammar* (1981) 29 Cal.3d 46, 55 and footnote 7, the Supreme Court confirmed that breach of the implied warranty of habitability can support an independent cause of action for damages, but overruled *Quevedo* to the extent it required that a tenant be unaware of the defective condition upon occupancy and that a landlord with preexisting notice of the defect be given additional time to repair it.

12

is presumed if: [¶] (1) He violated a statute . . . ."].) Thus, *Stoiber* concluded a tenant can choose to pursue a cause of action for negligence, for the recovery of tort damages, or a cause of action for breach of the implied warranty of habitability, for the recovery of contract damages. (101 Cal.App.3d at pp. 929–930.)

In light of *Green*, *Quevedo*, and *Stoiber*, it is now well established that a cause of action *for breach* of the implied warranty of habitability is "a contractual cause of action." (*Allstate Ins. Co. v. Loo* (1996) 46 Cal.App.4th 1794, 1798; *Fairchild, supra*, 90 Cal.App.4th at pp. 924–925.) Tort actions *for negligence*, based on a violation of statutory habitability standards and Evidence Code section 669, are also possible. (*Stoiber*, *supra*, 101 Cal.App.3d at pp. 929–930) But that does not alter the fundamentally contractual nature of the implied warranty of habitability or the fact that a cause of action for breach thereof is a *contractual* claim.

This is further illustrated by *Fairchild*, *supra*, 90 Cal.App.4th 919. In that case, the tenants sued their landlord for "breach of contract, breach of the implied warranty of habitability, negligence, and fraud." (*Id.* at p. 922.) "On the landlord's demurrer and motion to strike, the trial court dismissed the tenants' fraud claim and barred all tort relief on the claim for breach of the warranty of habitability." (*Ibid.*) The tenants thereafter prevailed on their habitability claim, recovering contract damages. (*Id.* at p. 925.) They then sought and were awarded attorney fees under the fee provision in their lease. (*Id.* at pp. 924–925.) The landlord appealed the fee award, arguing "since the covenant of habitability is imposed by law, it must sound in tort." (*Id.* at p. 927, italics omitted.) "Not so," said the Court of Appeal. (*Ibid.*) *Green* "made clear . . . section 1941 does not affect a tenant's right to pursue a claim for violation of the warranty of habitability." (*Fairchild*, at p. 925.) Moreover, even if the habitability claim were based on multiple theories—contract, tort, or even statutory—fees could still be claimed under the contract. (*Id.* at pp. 925–926.) With a hybrid cause of action, " 'when the prevailing plaintiff . . . has not elected a distinctive remedy in tort, such an action may be, and here is, "on a

13

contract" within the meaning of Civil Code section 1717.' " (*Id.* at p. 926, italics omitted.) Because all tort damages had been excised from the implied warranty cause of action at the outset of the case, the tenants' cause of action necessarily was "on a contract" and they were therefore entitled to contractual attorney fees. (See *id.* at p. 925.)

We reach the same conclusion as to the habitability claims that went to the jury here, for essentially the same reason—namely, they were presented to the jury as claims for breach of the implied warranty of habitability (not as negligence claims) and only contract damages (not tort damages) were sought in connection with the claims. As we discussed above, Carlson and Sheridan made separate claims for breach of the implied warranty of habitability and for negligence. By the time they sent their claims to the jury, they sought tort damages—that is damages to their person or property (the sine qua nom of tort damages [see *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 515–516]), only in connection with Sheridan's negligence claims (nonsuit having been granted on Carlson's negligence and intentional infliction claims, and Sheridan having abandoned her intentional infliction claim). They sought *contract* damages in connection with their breach of the implied warranty of habitability claims. Indeed, the jury was specially instructed as to the damages recoverable for breach of the implied warranty, and it was instructed in the language of *Quevedo*.[10]

Accordingly, the trial court erred in characterizing the habitability claims that went to the jury as common law tort claims. They were not. The jury was asked to decide claims for breach of the implied warranty of habitability ( i.e., contract claims), not

---

[10] Thus, the jury was told that if it found a breach of the implied warranty of habitability, it was to award as damages the difference between the rent charged as set forth in the rental agreement ($1,500, then $2,000) and a reasonable rent given the alleged defects in the mobile home. (See *Quevedo, supra,* 72 Cal.App.3d.Supp. at p. 8 [damages are "the difference between the rent paid during the duration of the unfit condition and the rent which would have been reasonable"]; *Stoiber, supra,* 101 Cal.App.3d at p. 915 [contrasting contract measure of damages with "damages for tortious injury such as discomfort, annoyance or mental anguish"].)

14

negligence claims, and concomitantly, was instructed to award contract damages, not tort damages, if it found a breach of the implied warranty. (See *Quevedo, supra,* 72 Cal.App.3d Supp. at p. 9; see also *Fairchild, supra,* 90 Cal.App.4th at pp. 924–925.)

In their respondents' brief, Carlson and Sheridan make no alternative argument that even if their habitability claims are contractual in character, the Staleys are not entitled to contractual fees under the rent agreement and Civil Code section 1717. Accordingly, we deem the Staleys' entitlement to contractual fees admitted, and need not, and do not, address that issue further.

### Attorney Fees on Minimum Wage Claims

The Staleys contend the attorney fees awarded to Carlson and Sheridan should have been limited to reflect their limited success. We agree the award to Carlson and Sheridan must also be reversed.

We begin by addressing the basis on which Carlson and Sheridan are entitled to fees. The trial court concluded they were "prevailing parties pursuant to Labor Code sections 218.5 and 1194."[11] This is incorrect. Section 1194 is a one-way fee statute authorizing attorney fees to an employee who prevails on a *minimum wage* claim, such as Carlson and Sheridan asserted in their first and fourth causes of action and on which they were successful.[12] (§ 1194, subd. (a).) Section 218.5, which authorizes fees to the prevailing party, applies to *other* types of wage claims, such as the contract wage claim Carlson and Sheridan asserted in their third cause of action and on which they did not succeed. (§ 218.5.) As the court of appeal explained in *Aleman v. AirTouch Cellular*

---

[11] All further statutory references are to the Labor Code unless otherwise indicated.

[12] Section 1194, subdivision (a), provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." (§ 1194, subd. (a).)

15

(2012) 209 Cal.App.4th 556, 579 (*AirTouch*), "[s]ections 218.5 and 1194 cover similar, though functionally exclusive, subjects. Section 218.5 provides, in pertinent part: 'In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action. . . . [¶] This section does not apply to any action for which attorney's fees are recoverable under Section 1194.' "

Since Carlson and Sheridan prevailed, in part, on their minimum wage claims, they are entitled to attorney fees under section 1194, subdivision (a). They are not entitled to fees under section 218.5 in connection with those claims. Nor are they entitled to fees under section 218.5 on any other basis, since they did not prevail on any other wage claims to which that section applies.

This point is important as it illustrates why courts must carefully review the hours claimed for legal work to insure that a fee award reflects time for which fees can be awarded and excludes time expended solely on claims for which fees may not be awarded, either because of lack of success or because there is no statutory or contractual basis for a fee award. In *AirTouch*, for example, the plaintiffs lost on both a "split shift compensation" claim and a "reporting time pay" claim. (*AirTouch*, *supra*, 209 Cal.App.4th at p. 579.) The court held the split shift claims were a species of minimum wage claim governed by the one-way attorney fee provision in section 1194, but the reporting time pay claims were not and were governed by the prevailing party fee provision in section 218.5. (*AirTouch*, at p. 579.) As a result, the prevailing defendant could not obtain fees incurred in connection with the split shift claim, but could obtain fees incurred in connection with the reporting time claim. (*Id.* at pp. 583–584.) The court rejected the plaintiff's assertion that the presence of a minimum wage claim in the lawsuit meant section 1194's one-way fee provision became the controlling fee provision for the *entire action*, precluding the defendant from recovering attorney fees under an

16

otherwise applicable statute such as section 218.5.  (*AirTouch*, at pp. 583–584; see also *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1250 [although not deciding the issue, noting appellate court "rejected plaintiffs' argument that, because at least some of their claims fell under section 1194, the entire action was shielded from an award of fees [on other claims to defendant] under section 218.5"]; *id.* at p. 1255 [fee statute should not be read to encompass types of claims beyond those intended and specifically covered by the statute]; see also *Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 688–689 [apportionment required between claims and others under Gov. Code, § 54960.5].)

With this framework in mind, we now turn to the Staleys' challenge to the amount of fees awarded to Carlson and Sheridan.  The Staleys first contend Carlson's and Sheridan's success on their minimum wage claims was so limited, they cannot be said to have prevailed under section 1194.  The couple's success was, indeed, very limited, in light of what they sought as trial started.  Carlson sought compensation for approximately 6,128.5 hours, but obtained minimum wages for only 168 hours, less than 3 percent of the hours he claimed.  Sheridan sought compensation for approximately 6,962.5 hours and obtained minimum wages for only 2,551 hours, or just over a third of the hours she sought.[13]

---

[13] In order to arrive at the approximate number of hours sought on the Labor Code claims, alone, we have started with the total hours sought (9,452 hours for Carlson: 5,568 regular hours and 3,884 overtime hours; 10,286 hours for Sheridan:  6,144 regular hours and 4,142 overtime hours) and subtracted the hours claimed from May 24, 2005 up to but excluding April 23, 2006, using Carlson's and Sheridan's own rubric (3,323.5 hours over 287 workdays, 155 days during daylight saving time at 12.5 hours per day and 132 days at during standard time at 10.5 hours per day).  In this way, we have eliminated hours for which restitution was awarded under Carlson's and Sheridan's Business and Professions Code section 17200 claims, since as fees are not recoverable in connection with that statute.

Even though Carlson's and Sheridan's success on their minimum wage claims was limited, the strong public policy underlying the one-way fee provision in section 1194, subdivision (a), necessitates the conclusion they prevailed and are entitled to an award of reasonable attorney fees. As the court explained in *AirTouch,* "section 1194 embodied a clear public policy of enforcing California's minimum wage and overtime laws for the protection of workers. [Citation.] Section 1194's one-way fee shifting rule 'was meant to "encourage injured parties to seek redress—and thus simultaneously enforce [the minimum wage and overtime laws]—in situations where they otherwise would not find it economical to sue." [Citation.]' [Citation.]" (*AirTouch*, *supra*, 209 Cal.App.4th at p. 580.)

The Staleys next contend that even if Carlson and Sheridan can be said to have prevailed on their minimum wage claims, they are entitled to only a reasonable fee award, which should reflect the limited degree of their success.

California courts have long held, in a variety of contexts, that determining a "reasonable" fee properly takes into account the extent of a party's success. (See *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 989 (*Chavez*) ["If a plaintiff has prevailed on some claims but not others, fees are not awarded for time spent litigating claims unrelated to the successful claims, and the trial court 'should award only that amount of fees that is reasonable in relation to the results obtained.' "], quoting *Hensley v. Eckerhart* (1983) 461 U.S. 424, 440 (*Hensley*); *Boquilon v. Beckwith* (1996) 49 Cal.App.4th 1697, 1722 ["reasonable" fees under Civ. Code, § 1695.6 properly took into account the extent of success]; *Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 250 ["reasonable" fees under private attorneys' general fee statute, Code Civ. Proc., § 1021.5, "should take into consideration the limited success achieved by appellants"]; see also *Hensley, supra,* 461 U.S. at p. 429 [apportionment appropriate under various federal civil rights statutes]; *King v. University Healthcare System L.C.* (5th Cir. 2011) 645 F.3d 713, 726 [apportionment appropriate under federal one-way

18

mandatory fee provision for successful minimum wage claims, 29 U.S.C. § 216, analog to California's section 1194]; *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 160–161 [proper for trial court to reduce mandatory fee award for limited success]; see generally 2 Richard M. Pearl, California Attorney Fee Awards (3d ed. 2013) Determining Lodestar, § 9.49, pp. 491–492 ["The most frequently litigated issue in determining the amount of reasonable attorney fees is the impact of the prevailing party's alleged lack of complete success on all of its contentions, claims, or requests for relief."]; see *id.*, §§ 9.50–9.64, pp. 492–505.)

Nothing in the language of section 1194, subdivision (a), suggests this same approach should not be taken in determining "reasonable" fees under this statute. Moreover, the analysis in *AirTouch*, distinguishing between claims for purposes of fees under sections 1194 and 218.5, militates just that approach. (See *AirTouch*, *supra*, 209 Cal.App.4th at pp. 583–584 [instructing trial court, on remand, to "determine the amount of reasonable attorney fees awardable . . . for defense of the reporting time causes of action, apportioning fees incurred for the separate causes of action as appropriate"].)

*Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407 (*Harman*), spells out a two-step process for arriving at a reasonable fee award that appropriately reflects limited success. (*Id.* at pp. 416–418.) The process starts by determining "the lodestar," which is the " ' "number of hours reasonably expended on the litigation times a reasonable hourly rate." ' " (*Id.* at p. 416; see also *PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095 ["the fee setting inquiry in California ordinarily begins with the 'lodestar' "].) *Harman* explains that in this first step, the trial court should exclude from the loadstar calculation hours spent solely on unsuccessful claims, since such hours cannot be deemed to have been reasonably expended on the claims on which the party prevailed and for which he or she is entitled to fees. (*Harman*, at p. 417.) Such apportionment is not appropriate, however, when successful and unsuccessful claims " ' "involve a common core of facts or are based on related legal theories" ' " or

19

when time spent on successful and unsuccessful claims is " 'so inextricably intertwined that it would be impractical or impossible' " to allocate the attorney's time. (*Id.* at p. 417; see also *Chavez, supra,* 47 Cal.4th at p. 989.)

There should likewise be apportionment in determining the lodestar when a case involves multiple claims and fees are recoverable in connection with only some of them. (See *AirTouch, supra,* 209 Cal.App.4th at pp. 583–584.) "When a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not permitted, the prevailing party may recover only on the statutory cause of action." (*Akins v. Enterprise Rent–A–Car Co.* (2000) 79 Cal.App.4th 1127, 1133.) However, again, "the joinder of causes of action should not dilute the right to attorney fees. Such fees need not be apportioned when incurred for representation of an issue common to both a cause of action for which fees are permitted and one for which they are not. All expenses incurred on the common issues qualify for an award." (*Ibid.*)

But even when initial apportionment in determining the lodestar is not possible (i.e., when the claims are inter-related), under *Harman*'s second step, the trial court must "still evaluate the 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation' " and determine if a reduction in lodestar fees is appropriate. (*Harman, supra,* 158 Cal.App.4th at pp. 417–418.) " 'In conducting this analysis, a court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." [Citation.]' [Citation.]" (*Id.* at p. 418; see also *Environmental Protection Information Center v. Department of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 239, 248 (*EPIC*).)

In *Chavez,* the Supreme Court observed "the extent of a plaintiff's success is a crucial factor." (*Chavez, supra,* 47 Cal.4th at pp. 989–990 [noting "[o]n this point, California law is consistent with federal law"]; *EPIC, supra,* 190 Cal.App.4th at p. 238; *Farrar v. Hobby* (1992) 506 U.S. 103, 114 [" 'the most critical factor' " in determining

20

the reasonableness of a fee award " 'is the degree of success obtained' "].) The focus in this regard is a comparison of the litigant's stated goals with the ultimate recovery, and not proportionality between the result and the fee award. (*Chavez*, *supra*, 47 Cal.4th at p. 989 ["attorney fees need not be strictly proportionate to the damages recovered" but " '[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief [citation], the only reasonable fee is usually no fee at all' "]; *Harman, supra*, 158 Cal.App.4th at p. 420.)

Here, the trial court made no apportionment of hours in determining the lodestar (step one under *Harman*), stating apportionment was "not required, practical, or desirable" as all claims "involved a common core set of facts." The trial court made this assessment, however, after determining the Staleys were not entitled to fees in connection with the habitability claims. Accordingly, the court may not have fully appreciated that Carlson and Sheridan are not entitled to any fees for any hours spent on habitability issues. Several billing entries appear to pertain to the habitability claims, and to the contract wage claims (on which they also did not prevail), alone. For example, the June 18, 2009, time entry references "[r]esearch re uninhabitability, illegal contracts, and rental value;" the June 19, 2009, entry, "[f]urther research re uninhabitability; [s]tart drafting memorandum;" and the June 15, 2010, entry, "[r]esearch re motion for property inspection."

Nor did the trial court make any post-lodestar reduction reflecting Carlson's and Sheridan's limited success (step two under *Harman*), stating the fact their attorney handled the matter on a contingency basis offset the couple's lack of success. We conclude the court's canceling-out approach was, in this case, an abuse of discretion, given the *degree* of Carlson's and Sheridan's overall lack of success.

While the trial court observed Carlson and Sheridan achieved limited success, it engaged in no further analysis. It made no comparison between the result they sought and the result they achieved, which, as we have discussed, is startling: Carlson sought

21

compensation for approximately 6,128.5 hours but obtained minimum wages for only 168 hours, while Sheridan sought compensation for approximately 6,962.5 hours but obtained minimum wages for only 2,551 hours. In monetary terms, Carlson sought $122,670.84 in contract wages (his minimum wage claim was a fallback position), overtime compensation and waiting penalties, but was awarded only $1,614 in uncompensated minimum wages and waiting time penalties. Sheridan sought $136,046.94 in contract wages (her minimum wage claim was also a fallback position), overtime compensation and waiting penalties, but was awarded only $19,834 in uncompensated minimum wages and waiting penalties. With the exception of the minimal restitution awarded under Business and Professions Code section 17200 ($830.25 awarded to Carlson, $7,148.25, to Sheridan), they did not prevail at all on their litany of non-minimum wage claims—for contract wages, failure to furnish wage statements, unlawful deductions, negligence, negligent infliction of emotional distress, intentional infliction of emotion distress, and breach of the implied warranty of habitability. In sum, Carlson recovered just over 1 percent of what he sought, and Sheridan, less than 15 percent, and they obtained no recovery at all on seven of their 11 claims. This significant lack of success cannot be wholly offset by the fact Carlson's and Sheridan's attorney handled the case on a contingency basis. Accordingly, the fee award to Carlson and Sheridan must also be reversed.

The Staleys raise several other issues in connection with the fee award, but none has merit. Alameda County Local Rule 3.70 disallows attorney fees "to a prevailing plaintiff when the amount recovered is within the limitation on a small claims court action and the action could have been brought in small claims court in the absence of unusual circumstances." (Super. Ct. Alameda County, Local Rules, rule 3.70.) While neither Carlson nor Sheridan ultimately recovered more than the small claims court jurisdictional limit, they sought substantially more than the limit, and thus their lawsuit could not have been brought in the small claims court. The fact different lawyers

represented Donald Carlson, and Carlson and Sheridan, does not mean their work was necessarily duplicative. The trial court was best positioned to see if the two lawyers were unduly duplicating the other's trial work. It found no undue duplication, nor do we see any in the record. Finally, the trial court did not need to consider Carlson's and Sheridan's rejection of the Staleys' informal settlement offer in assessing reasonable fees. (See *Greene v. Dillingham Construction N.A., Inc.* (2002) 101 Cal.App.4th 418, 424–426.)

### DISPOSITION

The attorney fee order is reversed and the case remanded to the trial court to: Determine and award reasonable contractual fees to the Staleys as the prevailing parties on the habitability claims. Determine and award reasonable fees to Carlson and Sheridan under Labor Code section 1194, subdivision (a), consistent with this opinion, as the prevailing parties on their minimum wage claims. Appellants to recover costs on appeal.

_____
Banke, J.

We concur:

_____
Margulies, Acting P. J.

_____
Dondero, J.

23