Filed 1/15/16  Philpott v. Midwest Roofing Co. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARK PHILPOTT, | B262185 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. YC 068948) |
| v. | |
| MIDWEST ROOFING CO., INC. et. al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Stuart M. Rice, Judge.  Affirmed.

Michael W. Ayotte for Plaintiff and Appellant.

Robert D. Feighner for Defendants and Respondents.

Plaintiff and appellant Mark Philpott (plaintiff) filed a lawsuit against his former employer, named defendants Midwest Roofing Co., Inc. and Midwest Roofing and Solar Corporation (referred to together as defendant), seeking payment of unpaid commissions he claimed he was due. Plaintiff was the prevailing party after a short trial, recovering some but not all of the amount he claimed he was owed. Based on a statutory fee shifting provision, plaintiff thereafter sought $212,287.50 in attorney's fees. Defendant objected to the fee request as extravagant and unreasonable, contending plaintiff was entitled to, at most, $30,000 in fees for what defendant argued was an uncomplicated case. The trial court awarded plaintiff attorney's fees of $58,341.50, and we are asked to decide whether the trial court's award was an abuse of discretion.

BACKGROUND

In April 2013, plaintiff filed a lawsuit to recover unpaid commissions from defendant. Plaintiff sought commissions for 15 different jobs he sold while employed by defendant, worth a combined total of $58,202. Plaintiff also sought a statutory waiting time penalty[1] of $13,380, bringing the total amount sought to $71,582. Although plaintiff entered into a "pure contingency" fee agreement with his attorney, Michael Ayotte, plaintiff was entitled to recover statutory attorney's fees if he prevailed on his causes of action for violations of Labor Code sections 201, 202, 203, and 218. (Lab. Code, § 218.5.)

In March 2014, which was early in the pre-trial discovery phase of the case, defendant unilaterally made a payment to plaintiff of $3,875 for the 11 smallest jobs on which he claimed to be owed a commission. Defendant continued to deny that a waiting time penalty was due, or that commissions were owed on the remaining four jobs. Later that same month, defendant brought a motion to amend certain of its responses to

---

[1]     Labor Code section 203 provides that if an employer willfully fails to pay the wages of any employee who is discharged or quits, the wages of the employee shall continue as a penalty for a maximum period of 30 days. These continuing wages are commonly referred to as a waiting time penalty.

requests for admissions. This was the sole pre-trial motion filed by either side in the case. Plaintiff opposed the motion, but defendant prevailed.

On May 23, 2014, the trial court held a voluntary settlement conference. Plaintiff offered to settle for $75,000, a figure that included his attorney's fees. Assuming a contingency fee arrangement of 40%, his attorney would have received $30,000.[2] At that time, plaintiff's attorney had billed a total of 120.3 hours. Defendant's final offer at the settlement conference was $35,000, and no settlement was reached.

A bench trial began on June 18, 2014. Almost immediately, defendant stipulated that it owed a waiting time penalty of $13,380. The trial court again attempted to settle the case, but without success: plaintiff repeated his offer of $75,000 (inclusive of fees), but defendant's best offer was $55,000.[3] By this point in the case, plaintiff's attorney had billed an additional 142 hours for trial preparation undertaken after the voluntary settlement conference, for a total of 262.3 hours in the case overall.

Trial continued over partial days on June 18, 19, and 25, 2014. Plaintiff and defendant's owner Darren Tangen were the primary witnesses. Two current employees of defendant also testified briefly for the defense. The full trial lasted less than eight hours, and no request was made for a formal statement of decision.

On August 14, 2014, the trial court orally rendered its decision and awarded plaintiff damages totaling $26,399.50 on the four jobs that had been litigated at trial. In awarding that sum, the trial court found plaintiff was not entitled to the full amount demanded on two of the most contentious claims. Adding the stipulated waiting time penalty to the damages awarded and the pre-trial payment defendant made to plaintiff for

---

[2]     Although plaintiff's attorney declared under penalty of perjury that his fee agreement with defendant "was on a pure contingency basis," he did not provide details of the agreement, such as the contingency percentage.

[3]     The record does not contain a reporter's transcript of the proceedings on June 18, so we do not know the details of defendant's settlement offer. But defendant's settlement offer of $55,000 must have been inclusive of attorney's fees because plaintiff was seeking a total of $54,327 in commissions at the time of the offer, and the offer was rejected.

the 11 smaller commissions, plaintiff recovered a total of $43,654.50, roughly 60% of the amount he had initially sought.

Following trial, plaintiff filed a motion to recover attorney's fees. He sought fees in the amount of $450 per hour for 329.1 hours ($148,095) and he also sought a multiplier of 1.5, for a total fee award of $212,287.50. Plaintiff's calculation of the hours his attorney spent on pre-trial work included 120.3 hours of work performed through the voluntary settlement conference, including 12.3 hours for fact investigation, analysis and strategy, 12.6 hours preparing pleadings, 78.3 hours on discovery (including 25.4 hours on depositions and 19.7 hours on discovery motions), and 14.4 hours on settlement. He also sought fees for 165 hours of trial preparation and trial, consisting of 50 hours for witness preparation, 32 hours for trial document preparation, and 60 hours of "other" preparation, plus 23 hours of trial. He further sought fees for 43.8 hours of post-trial work, consisting of the fee motion and his opposition to defendant's owner's motion for costs.

Defendant opposed the motion, contending that $30,000 in attorney's fees was a more than reasonable amount. Defendant specifically argued that 12.6 hours to prepare the complaint, 25.4 hours to prepare for and attend two depositions, and 19.7 hours to oppose defendant's motion to amend its answers to requests for admission were excessive. Defendant did not make itemized objections in its opposition to the other hourly calculations plaintiff presented, but defendant did contend the hours plaintiff's attorney spent on trial preparation was excessive. Defendant did not submit a declaration or other evidence with its opposition papers.

The trial court held a hearing on the motion and heard argument from counsel. The record on appeal does not contain a reporter's transcript or settled statement of the hearing. As we set forth in more detail in our discussion below, the trial court issued a written ruling in which it found that plaintiff was the prevailing party and entitled to attorney's fees, but the court concluded the amount of fees plaintiff sought was unreasonable. The court found 147.7 hours of attorney time, not 329.1 hours as plaintiff claimed, to be reasonable. The court further found an hourly rate of $395 to be

4

"reasonable given the nature of the case and rates charged for comparable legal services in the area." The trial court therefore awarded attorney's fees of $58,341.50; the court did not award a multiplier.

DISCUSSION

Plaintiff contends the trial court's reduction in the hourly rate and number of hours, and its failure to award a multiplier, each constitute an abuse of discretion. We affirm the trial court's order awarding attorney's fees.

A.     *Applicable Law*

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095.) "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. (*Serrano v. Priest* [(1977)] 20 Cal.3d [25,] 49.)" (*Ibid*.) The lodestar figure "may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. (*Serrano v. Priest, supra,* 20 Cal.3d at p. 49.)" (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132) "Of course, the trial court is not *required* to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof." (*Id.* at p. 1138.) "Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." (*PLCM Group v. Drexler, supra,* at p. 1095.)

"'It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court . . . [Citations.] The value

5

of legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.] The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony. [Citations.] The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.' (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623-624.)" (*PLCM Group v. Drexler, supra,* 22 Cal.4th at p. 1096.)

"[T]he items on a verified cost bill are prima facie evidence the costs, expenses and services listed were necessarily incurred, and when they are properly challenged the burden of proof shifts to the party claiming them as costs. (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 624.) However, our review is not limited to a determination of the sufficiency of plaintiffs' motion to rebut the presumption. A trial judge 'is entitled to take all of the circumstances [of the case] into account and is not bound by the itemization claimed in the attorney's affidavit.' (*Id*. at p. 625.)" (*Hadley v. Krepel* (1985) 167 Cal.App.3d 677, 682-683, fn. omitted.)

### B.    *Trial Court's Ruling*

In its written decision on plaintiff's attorney's fee motion, the trial court ruled as follows:

"Plaintiff Mark Philpott's motion for statutory attorney's fees pursuant to Labor Code section 218.5 is granted in part. The plaintiff's request for fees has been modified as described below.

"There is no dispute that the plaintiff, as the prevailing party, is entitled to reasonable attorney's fees by statute. However, the defendants oppose the amount of fees requested by the plaintiff and suggests a maximum of $30,000. The court finds that the amount of attorney's fees requested by the plaintiff, $212,287.50, is not reasonable, and awards fees in the amount of $58,341.50.

6

"The proper method for analyzing the reasonableness of statutory attorneys fees is the lodestar method. The lodestar is 'the basic fee for comparable legal services in the area.' (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 165, citing *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.) Courts use the lodestar method to determine fees by analyzing the number of hours reasonably expended multiplied by the reasonable hourly rate. (See *PLMC Group v. Drexler* (2000) 22 Cal.4th 1084, 1095.) While the fee awards are fact-specific, courts must keep in mind the fundamental importance of lodestar amounts as they exercise their discretion in determining the value of legal services performed in a given case. (See *Graciano* [*v. Robinson Ford Sales, Inc.,*] *supra*, at p. 155.)

"The court has considered the oral arguments presented on December 12, 2014, reviewed the cases referenced by the plaintiff, and examined the exhibits and declarations in support of the fee request. After doing so, the court finds that $395 per hour is reasonable given the nature of the case and rates charged for comparable legal services in the area.

"An additional multiplying factor is not necessary to bring the level of attorney's fees to a reasonable amount under the circumstances. The cases cited by plaintiff's counsel do not stand for the proposition that lodestar amounts must be increased solely because counsel's fee was contingent on recovery. A contingent fee arrangement is an important factor when considering whether to increase the lodestar rate, and a multiplier based purely on an attorney's assumption of the risk associated with contingent fee representation may at times warrant such an increase. But the existence of a contingent fee does not by itself require a court to impose a multiplier. On the contrary, the cases cited by the plaintiff reiterate the trial court's discretion in determining whether to adjust the lodestar rate. (See, e.g., *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1216 ['A trial court has discretion to adjust the lodestar amount to take account of unique circumstances in the case[]'].)

"After reviewing the attorney billings, the court finds reasonable time expended to be 147.7 hours. The case was not unusually complex and did not involve a significant

7

amount of pre-trial motion work. Discovery was not abnormally extensive, and the trial was conducted over three partial court days.

"Calculating 147.7 hours at a rate of $395 results in a fee award of $58,341.50. This amount represents the reasonable value of attorney's fees in this action. Plaintiff is awarded attorney's fees pursuant to Labor Code section 218.5 in the amount of $58,341.50 against defendants Midwest Roofing Co, Inc. and Midwest Roofing & Solar Corporation."

C.    *Analysis*

Plaintiff contends defendant's opposition to the attorney's fees motion "entirely" failed to rebut his attorney's verified billing records and case authority and so the trial court abused its discretion in reducing the number of hours and hourly rate verified by his attorney. Plaintiff also contends a positive multiplier is required to adequately compensate attorneys like his who take cases on a contingency fee basis, and so the trial court abused its discretion in failing to apply the 1.5 multiplier sought by plaintiff. Plaintiff criticizes the court's ruling as "unexplained" and lacking a "rational basis."

The trial court did not abuse its discretion simply because the reduction it ordered did not correspond to the reduction proposed in defendant's opposition to the motion. It is well established that "'[t]he trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony.'" (*PLCM Group, supra,* 22 Cal.4th at p. 1096, quoting *Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623-624.) Thus, while plaintiff's attorney's verified billing records are "prima facie evidence" that the services were "necessarily incurred," a court is not limited in its determination of reasonable attorney's fees "by the sufficiency of [the opposing] motion to rebut the presumption" that the fees were necessary. (*Hadley v. Krepel, supra,* 167 Cal.App.3d at pp. 682-683, fn. omitted.)[4]

---

[4]    Plaintiff cites cases holding the party challenging a fee request must point to specific items challenged and provide supporting argument and citations. (See *Premier*

8

We also reject plaintiff's characterization of the trial court's decision as unexplained and irrational.  The trial court did provide an explanation for its reductions, stating, "The case was not unusually complex and did not involve a significant amount of pre-trial motion work.  Discovery was not abnormally extensive, and the trial was conducted over three partial court days."  Thus, the trial court's finding that the requested attorney's fees were "unreasonable," is a determination that plaintiff's attorney spent more time than was necessary working on the case.  The court also explained that a rate of $395 per hour was "reasonable given the nature of the case and rates charged for comparable legal services in the area."  The trial court recognized that a multiplier may be applied to the attorney's fee award when the attorney has taken the case on a contingency fee basis, but found "[a]n additional multiplying factor is not necessary to bring the level of attorney's fees to a reasonable amount under the circumstances."

Plaintiff is correct that the trial court's written ruling does not provide itemized numbers.  The court does not, for example, state that 25.4 hours for depositions was unreasonable, and a reasonable amount would have been 12 hours.  Plaintiff's brief, however, suggests that the trial court did provide a more detailed explanation for the cuts at the hearing on the motion.  According to plaintiff, the court stated at the hearing that it intended to award 40 hours for trial preparation, 10 hours for trial and 8 hours for the fee and costs motions.  Such a detailed explanation would be consistent with the court's statement when orally rendering judgment after trial that "it's not my practice to simply say, 'you win and you lose.'  I always explain why I ruled, how I ruled."  Plaintiff did

_____

*Medical Management. Systems Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 563-564 (*Premier*).)  *Premier* states that a challenging party that does not meet this burden cannot affirmatively demonstrate error on appeal to overcome the presumption in favor of the trial court's ruling and, indeed, may be found to have forefeited its right to appeal the trial court's fee award.  (*Ibid*.)  That, of course, is not the situation here where it is *plaintiff* that is challenging the trial court's ruling (which awarded a reduced fee amount based on a discretionary determination that the larger sum of fees plaintiff sought was unreasonable).

not, however, request a transcript of the hearing on his fee motion be included in the record on appeal, nor did he obtain a settled statement.[5]

It is the burden of the party challenging the fee award on appeal to provide an adequate record to assess error. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.) If the trial court's written order does not specify the basis of its calculation, the party should augment the record with a settled statement or transcript of the hearing. (*Ibid*.) The failure to do so may result in the party's claim being resolved against them. (*Id*. at pp. 1295-1296 [resolving claim against party claiming error in fee award because inadequate record made it "impossible for [court] to determine whether the trial court based its award on the lodestar adjustment method"].)

Here, the lack of an adequate record does preclude us from making a detailed examination of the specific number of hours awarded by the trial court.[6] It therefore also precludes us from making a determination that the trial court abused its discretion in making its specific award. (*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 448.) We do not presume error. (*Id*. at p. 447; see *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1201 [error must be affirmatively shown on appeal].)

Even assessing plaintiff's claims of error on the limited record before us, we would not hold that the trial's decisions to reduce the number of hours and hourly rate, and to decline to impose a multiplier were abuses of discretion. "In applying the abuse of discretion standard of review, it is not the role of the appellate court to substitute its own view as to the proper decision. [Citation.]" (*Parkview Villas Assn., Inc. v. State Farm Fire and Cas. Co.* (2005) 133 Cal.App.4th 1197, 1208.)

---

[5]     There is no minute order for the December 12 hearing in the record on appeal, so it is not known if a court reporter was present.

[6]     Without a record of what transpired at the hearing, we are also unaware whether defendant presented any additional specific objections to the hours plaintiff claimed his attorney spent on various aspects of the case.

10

The trial court's written ruling shows that it correctly used the lodestar method to calculate the award of $58,341.50 and that it then determined no multiplier was necessary. Thus, the trial court used the correct methodology.

We see no abuse of discretion in the trial court's conclusion that the case was not unusually complex. Although plaintiff initially alleged seven causes of action, the essence of his complaint was that defendant failed to pay commissions it owed him for 15 jobs, which breached the terms of their contract and also violated provisions of the Labor Code.[7] The basis for all the claims was a short "compensation plan" agreement between plaintiff and defendant. Early in the commencement of discovery, defendant paid plaintiff for 11 of the 15 jobs. Trial on the commissions due on the remaining four jobs was a bench trial which took less than eight hours of trial time over three days, and involved only four witnesses: plaintiff, defendant's owner, and two of defendant's employees, who testified briefly about their own compensation packages.[8]

We also see no abuse of discretion in the trial court's conclusion that "[d]iscovery was not abnormally extensive" and the case "did not involve a significant amount of pre-trial motion work." There were only two depositions, one of plaintiff and one of defendant's owner. Together they totaled about four hours. There were no expert witnesses. There was only one pre-trial motion, which involved defendant's successful request to amend four of its answers to requests for admissions.

---

[7]     Midway through the trial, defendant moved to dismiss the fifth cause of action for fraud, the sixth cause of action for negligent misrepresentation, and the seventh cause of action for conversion on the ground that plaintiff had not produced any evidence to support those causes of action. Plaintiff's attorney responded that he was not opposed to dismissing those claims and that plaintiff was "here for the wages and . . . penalty." The court granted defendant's motion, leaving the first and third causes of action for Labor Code violations and the fourth cause of action for breach of contract, plus a cause of action for an accounting.

[8]     Employee Randy Quinton was called by defendant, who asked him fourteen questions; cross-examination consisted of seven questions. Employee William Younkin was also called by defendant, who asked him 13 questions about his commissions on jobs which were not completed at "par." Cross-examination consisted of eight questions.

11

The trial court found $395 per hour to be "reasonable given the nature of the case and rates charged for comparable legal services in the area." This rate was at the low end of the range identified by plaintiff. The trial court did not abuse its discretion in selecting this rate based on the evidence before it, and given the lack of complexity of the case.

Although the trial court's written ruling did not discuss the success or failure of the lawsuit, we note that plaintiff recovered only about 60% of the amount he originally sought. Plaintiff's recovery is in line with the settlement amount he twice sought before trial. The difference in the amount he originally sought and the amount he obtained is due to his partial recovery on two of the most contested jobs. Although the lawsuit was a success, it was not an overwhelming one.

There is nothing in the record to show that the trial court abused its discretion in declining to impose a multiplier for contingent risk. The court found that plaintiff's fee request was unreasonable; the court did not need to consider a multiplier in such circumstances. (*Christian Research Inst. v. Alnor* (2008) 165 Cal.App.4th 1315, 1329; see *Ketchum v. Moses, supra*, 24 Cal.4th at p. 1138 [multiplier not required for contingent risk].)

Further, apart from contingent risk, no other factors were present which supported the imposition of a multiplier. Other relevant factors include "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, [and] (3) the extent to which the nature of the litigation precluded other employment by the attorneys. . . . (*Serrano v. Priest, supra,* 20 Cal.3d at p. 49)" (*Ketchum v. Moses, supra*, 24 Cal.4th at p. 1132.) There are no apparent novel issues of law in this action, and the trial court found the case was not complex; no extraordinary skill was required to try the case. We see no indication in the record that this case precluded plaintiff's attorney from obtaining other employment for any significant period of time; plaintiff's attorney recorded only 120.3 hours of work in this case during the first year it was pending.

A multiplier may also be appropriate in cases involving the enforcement of statutory or "constitutional rights, but little or no damages [since] such fee enhancements may make such cases economically feasible to competent private attorneys. (*Weeks v.*

12

*Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1172.)" (*Ketchum v. Moses, supra*, 24 Cal.4th at p. 1133.) This case did involve an important statutory provision that requires prompt payment of employee wages, but the actual claims litigated were not substantial. The trial court did award attorney's fees, and we see no basis to conclude that the fee award was insufficient to make this or other similar cases economically feasible for an attorney to pursue.

      D.      *Plaintiff's Claims of Implied Improper Methodology and Analysis*

Plaintiff argues, in effect, that the trial court must have used an improper methodology and analysis because there is no rational way the trial court could have awarded only 147.7 hours for the entire case. Plaintiff suggests several possible explanations for the court's decision.

He first contends "[p]revailing party fee-shifting attorney fees are not linked in any way to the underlying fee agreement, but are instead required to be determined according to the lodestar/adjustment method. Here, it appears that the trial court failed to recognize this shift. . . . " To the contrary, the trial court expressly applied the lodestar method. Nothing in the trial court's written decision suggests that the trial court based its award on the underlying fee agreement. Plaintiff frequently asks us to assume that the agreement was a standard 40% contingency agreement; if the trial court had relied on such an agreement, the resulting award would have been smaller than plaintiff's recovery, not 33% larger than that recovery.

Plaintiff also suggests that the trial court "reverse engineered an amount that it deemed was sufficient based on some type of proportionality adjustment." Plaintiff seems to believe that the trial court found his attorney's hours to be unreasonable because the action resulted in a verdict of only $43,229.50. Plaintiff cites four cases in which large attorney fee awards were upheld in cases with small verdicts, but he makes essentially no attempt to compare the relative complexity (or lack thereof) of this action

to the litigation at issue in the cases he cites.[9] We do not understand the trial court to have based its attorney's fees award on the size of the verdict. The court based its finding on the lack of complexity of this action.

Plaintiff also notes that the $58,341.50 awarded is "fairly close to the $54,135 amount [plaintiff's attorney] estimated above for the 120.3 hours billed through the [s]ettlement [c]onference" at $450 per hour. There is nothing in the court's written decision to suggest that the court limited the attorney's fee award to an amount equal to billing through the settlement conference, and plaintiff does not explain why the court would impose such a limitation. Nothing in the record on appeal suggests that the court believed that plaintiff was being unreasonable in refusing defendant's offer at the settlement conference and going to trial. Plaintiff's recovery of $39,779.50 at trial exceeds defendant's settlement offer of $35,000, and does so by a wide margin when statutory attorney's fees are included in plaintiff's recovery.

While we cannot evaluate any specific hourly finding that the trial court made, given the inadequate record before us, we do note that at the beginning of trial, plaintiff was willing to settle for $75,000, an amount which he suggests would have given his attorney $30,000 in attorney's fees under a standard contingency fee agreement. This offer was made after defendant stipulated it would pay the waiting time penalty. There was still an element of risk in going to trial, but as plaintiff acknowledges on appeal,

---

[9] Plaintiff's cases all involve jury trials and appear to be significantly more complex than this case. (*Syers Properties III v. Rankin* (2014) 226 Cal.App.4th 691 [legal malpractice claim where underlying representation lasted seven years]; *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 411, 415 ["protracted and hard-fought litigation" which began in 1999]; *Vo v. Las Virgenes Municipal Water Dist., supra,* 79 Cal.App.4th at p. 442 [three-week jury trial]; *Beaty v. BET Holdings, Inc.* (9th Cir. 2000) 222 F.3d 607, 610 [court concluded hours submitted were reasonably spent given "the nature of the issues to be litigated and the difficulty of the case"].) In addition, two of the cases did not reach the issue of the reasonableness of the hours sought by the prevailing party's attorney. (*Vo v. Las Virgenes Municipal Water Dist., supra,* at p. 447 [award affirmed primarily due to lack of adequate record]; *Beaty v. BET Holdings, Inc., supra,* at p. 610 [defendant stipulated that the plaintiff's attorney had not spent excessive time on any particular task].)

14

defendant's stipulation "all but guaranteed [plaintiff] being deemed prevailing party and entitled to attorney's fees" under the Labor Code. Thus, we cannot find that the trial court's award of $58,341.50—essentially double the amount of attorney's fees plaintiff was willing to accept on the first day of trial—is unreasonable on its face.

DISPOSITION

The trial court's post-judgment order awarding attorney's fees is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

TURNER, P.J.

KRIEGLER, J.

15